# WHELESS *v.* WHELESS.

| 92 | 293 |
| 110 | 213 |

## (*Nashville.*   March 2, 1893.)

EQUITABLE CONVERSION.   *Of realty into personalty not effected, when.*

Equitable conversion of land into personalty is not effected so that it will pass to the distributee, and not to the heir, of the owner upon his death intestate, where the land had been conveyed to a trustee for the benefit of a syndicate of speculators composed of the intestate and several others, by a deed providing that each member of the syndicate should pay his due proportion of the purchase-price of the land, and that the trustee should have " power and authority to hold, possess, and manage the same, in their interest and behalf, and to sell and convey the same by deed in fee-simple, upon the written direction of a majority in value of the adult beneficial owners then living, upon such terms and conditions as they may direct, and to collect and divide the proceeds of sale among said beneficiaries, their heirs, administrators, executors, and assigns as their several interests may appear."   And providing, further, that "the aforesaid sum of $34,-395.60 (the purchase-price) has been paid and secured to be paid as follows :   *   *   To secure the payment of the promissory notes herein described, a lien is expressly retained upon the share or interest of the maker alone and not against the tract as a whole.   In case any of the beneficiaries herein named, in order to preserve his or their own title, should have to pay and discharge for another any accruing taxes or other incumbrance or lien upon the whole property, then, in that event, he or they shall have a lien upon the share or interest of the person who has failed to make such payment."   And, providing further, that the trustee may resign " with the consent and approval, in writing, of a majority in value of the adult beneficial owners named above, and appoint in his room and stead a new trustee, and clothe him with like power and duties as those now conferred on him by a suitable deed of conveyance, in writing, to be recorded," etc. This deed does not contain that clear, imperative, and unconditional direction for sale of the land which is essential to equitable conversion.

Cases cited and approved : Stephenson *v.* Yandle, 3 Hay., 109 ; McCormick *v.* Cantrell, 7 Yer., 615 ; Williams *v.* Bradley, 7 Heis., 58 ;

Green v. Davidson, 4 Bax., 488; 19 N. J. Eq., 375; 70 Wis., 19; 95 N. Y., 598.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. J. A. CARTWRIGHT, Sp. Ch.

JOSEPH WHELESS, JR., and N. D. MALONE for Complainants.

DICKINSON & FRAZER, STOKES & STOKES, and FRIZZELL & ZARECOR for Defendants.

G. N. TILLMAN, guardian ad litem.

J. S. PILCHER for widow of J. F. Wheless.

J. W. BYRNES for McCrosky.

CALDWELL, J.   Gen. John F. Wheless died, intestate and without issue, leaving a widow and numerous collateral kindred. The bill in this cause was filed for a partition of his lands, where that could be done, and for sale and division of proceeds, where partition in kind might not be practicable.

The widow, in her answer, claimed that the undivided interest of her husband in what is known as the Baxter Smith tract was not realty,

but personal property, under the doctrine of equitable conversion, and that it therefore belonged to her, as distributee, and not to the heirs.

The Chancellor decided this question against her, and she appealed.

No doctrine is more firmly fixed in English and American jurisprudence than that of equitable conversion, by which, under certain circumstances, real estate is treated in equity as personal property, and personal estate as real property.

Through this doctrine, Courts of Equity treat as land money directed to be employed in the purchase of land, and as money land directed to be sold and converted into money; and the direction upon which the conversion arises may be made by will, or by deed, settlement, or other contract *inter vivos*. Adams' Equity, *135, 136; 1 Pomeroy's Eq., Sec. 371; 1 Story's Eq., Sec. 790; 4 Am. and Eng. Ency. of Law, 127; 6 Am. and Eng. Ency. of Law, 664, 665.

It was early recognized in this State (*Stephenson* v. *Yandle*, 3 Haywood, 109), and has since been applied in several cases upon the construction of wills. *McCormick* v. *Cantrell*, 7 Yer., 615; *Williams* v. *Bradley*, 7 Heis., 58; *Green* v. *Davidson*, 4 Bax., 488.

The difficulty which sometimes arises in the application of the principle to a particular instrument, lies not in the subtlety of the principle itself, but rather in ascertaining the intention of the maker from the words employed.

To operate as a conversion, the direction that the form of the property be changed must be *imperative*, in the sense of being positive and unmistakable. If the intention, as gathered from the whole instrument, be left in doubt, or the direction allows the trustee to sell or not, as he deems best, the Courts are not at liberty to say that a conversion has taken place, but must deal with the property according to its actual form and character. 2 Story's Eq., Sec. 1214.

Mr. Pomeroy says: "No express declaration in the instrument is needed that land shall be treated as money, although not sold, or that money shall be deemed land, although not actually laid out in the purchase of land. The only essential requisite is an absolute expression of an intention that the land *shall be* sold and turned into money, or that the money *shall be* expended in the purchase of land. * * * The true test in all such cases is a simple one: Has the will or deed creating the trust absolutely directed, or has the contract stipulated, that the real estate be turned into personal, or the personal estate be turned into real?" 3 Pomeroy's Eq., Sec. 1159.

Again, "the whole scope and meaning of the fundamental principle underlying the doctrine are involved in the existence of a *duty* resting upon the trustees, or other parties, to do the specified act; for unless the equitable *right* exists, there is no room for the operation of the maxim, 'Equity regards that as done which ought to be done.'

The rule is therefore firmly settled that, in order to work a conversion *while the property is yet actually unchanged* in form, there must be a clear and imperative direction in the will, deed, or settlement, or a clear, imperative agreement in the contract, to convert the property—that is, to sell the land for money or to lay out the money in the purchase of land. If the act of converting—that is, the act itself of selling the land, or of laying out the money in land—is left to the option, discretion, or choice of the trustees or other parties, then no equitable conversion will take place, because no *duty* to make the change rests upon them. It is not essential, however, that the direction should be *express* in order to be imperative; it may be necessarily implied. * * * If by express language, or by a reasonable construction of all its terms, the instrument shows an intention that the original form of the property shall be changed, then a conversion necessarily takes place." *Ib.*, Sec. 1160.

To the same effect are *Wait's Ex'rs* v. *Page*, 19 N. J. Eq., 375; *Ford* v. *Ford*, 70 Wis., 19; *Hobson* v. *Hale*, 95 N. Y., 598.

Numerous other authorities, text-books, and judicial decisions are at hand, but they are, in the main, so harmonious, and so entirely in accord with the full quotation just made from Mr. Pomeroy, that we forbear to make further citations with respect to the character of direction neces-

sary to work the notional change and call the doctrine of equitable conversion into play.

As a matter of some moment on the question of construction, it is well to observe that, unless the sale or purchase contemplated is expressly directed to be made at a specified time in the future, or upon the happening of some particular event, which may or may not happen, the conversion takes place, in wills, as from the death of the testator, and in deeds and other instruments *inter vivos*, as from the date of their execution. 3 Pomeroy's Eq., 1162.

The instrument upon which the controversy arises in this cause is a deed, in the following language:

" We, Baxter Smith and wife, Bettie G. Smith, * * * * in consideration of the sum of $34,395.60, paid and secured to be paid as hereinafter mentioned, have bargained and sold, and do hereby transfer and convey, unto James H. Yarbrough, in trust, as hereinafter mentioned, the following tract of land: * * * *

" To have and to hold for himself and other beneficiaries hereinafter named, in trust for the following uses and purposes—that is to say, said tract of land has been jointly purchased by James C. Warner, Percy Warner, John P. White, John F. Wheless, B. F. Wilson, W. M. Grantland, Chas. L. Ridley, Baxter Smith, and J. H. Yarbrough, L. H. Davis, and G. A. Maddux, the last three purchasing as a firm, under the firm name and style

·of Yarbrough, Maddux & Davis, each paying and to pay one-tenth of the purchase-money for said land, as hereafter set out, except John P. White, who pays two-tenths; * * * * said tract of land is conveyed to said J. H. Yarbrough, as trustee for said named purchasers, with power and authority to hold, possess, and manage the same in their interest and behalf, and to sell and convey the same by deed in fee-simple, upon the written direction of a majority in value of the adult beneficial owners then living, upon such terms and conditions as they may direct, and to collect and divide the proceeds of sale among said beneficiaries, their heirs, administrators, executors, and assigns, as their several interests may appear. * * * * The aforesaid sum of $34,-395.60 has been paid and secured to be paid as follows: * * * * To secure the payment of the promissory notes herein described, a lien is expressly retained upon the share or interest of the maker alone, and not against the tract as a whole. In case any of the beneficiaries herein named, in order to preserve his or their own title, should have to pay and discharge for another any accruing taxes or other incumbrance or lien upon the whole property, then, in that event, he or they shall have a lien upon the share or interest of the person who has failed to make such payment. Should said J. H. Yarbrough desire to resign the trust herein given him, he may do so by and with the consent and approval, in

writing, of a majority in value of the adult beneficial owners named above, and appoint in his room and stead a new trustee, and clothe him with like power and duties as those now conferred on him, by a suitable deed of conveyance, in writing, to be recorded in the Register's Office of Davidson County, Tennessee."

Such are the material portions of the instrument the Court is called upon to construe in this case; and the inquiry is, whether the land conveyed thereby is to be treated in equity as realty or as personalty. If as realty, the share of General Wheless passed to his heirs under the statute of descent; if as personalty, it went to his widow as sole distributee, subject in either case, of course, to his debts.

A general view of the deed readily discloses a proposed speculation entered into by several persons jointly—a syndicate buying land to sell again. In furtherance of the scheme, a trustee was appointed and the land conveyed to him for the benefit of all the purchasers, for each of them according to his interest.

The idea of a resale, as the ultimate object of the enterprise, runs through the whole instrument. It appears from the nature of the transaction, from the words conferring upon the trustee power and authority "to sell * * * and collect and divide the proceeds," and from the provision for appointment of successor in case the trustee should resign, that a partition in kind should ever occur, or

Wheless *v.* Wheless.

that the trust should cease before a sale of the land and division of its proceeds were fully accomplished, was never contemplated. The land was bought to sell again, and a trustee was appointed as a part of the plan.

All this is clear; but it is entirely consistent with the proposition that the trust was created merely as a cheaper and more convenient method of preserving and conveying the land.

More is required to make a case of equitable conversion. The fact of a contemplated resale is present in every purchase of land upon speculation, and land purchased with such view is not converted into personalty by the mere appointment of a trustee to receive the title, and as the agency through which the resale is to be accomplished for the owners.

It is manifest that the paramount object of the enterprise was a resale of the land, through the trustee as representative of the beneficial owners; yet the deed does not contain any imperative direction that he *shall* sell. No absolute, unconditional *duty* to sell is placed upon him; "the equitable *ought*" is not to be found in the deed, either as a matter expressed or to be necessarily implied. Not only does it contain no positive direction that he *shall* sell, but it, in reality, does not even *permit* him to sell upon his own motion. His only power of sale is made to depend, expressly, upon the direction of others. He has no independent authority in that respect. The words

of the deed, on this point, are: "With power and authority to hold, possess, and manage the same in their interest and behalf, and to sell and convey the same by deed in fee-simple *upon the written direction of a majority in value of the adult beneficial owners then living, upon such terms and conditions as they may direct.*"

This language imposes upon the trustee no positive, unqualified *obligation* to sell the land *at all events.* At most it but gives him *authority to sell*, at such time and upon such terms and conditions as others may direct. In effect it but makes him the instrumentality through which a majority of the beneficial owners, living at any given time, may make a sale. He has no right to sell without their written direction, and no authority to demand or require such direction at one time or another. It cannot be that a conversion was wrought by the creation of a trustee so passive as this one is.

To meet the fact that the trustee has no power to sell, unless directed by a majority of the adult beneficiaries to do so, it is suggested that the beneficiaries themselves are clothed with a trust, to the extent of being empowered to direct when and how the sale shall be made, and that they are bound to give such direction.

There can be no doubt that it was contemplated that the beneficiaries should, at some time, give the trustee the required direction to sell the land, and that a duty was, to that extent, indirectly

devolved upon them; but that can hardly be said to have made trustees of them, or to have magnified the limited power of the real trustee into an imperative obligation to convert the land into money.

The purchasers, though intending an ultimate sale, clearly had no thought that the terms of the deed changed the character of the property, and converted the real estate into personalty. That they intended the land to be held as realty until actually sold and turned into money, is manifest from the general frame and terms of the deed, and especially from those parts of it retaining separate liens in favor of the grantor, and providing for a special lien in favor of such beneficiaries as might be compelled to pay taxes or discharge liens for others. In the portions of the deed last, referred to, the interest of each of the several beneficiaries is referred to as an interest in *land* as such, and provisions are made with reference thereto which would be inappropriate as applied to personalty.

We are of opinion that the deed shows upon its face, when considered as a whole, that the land was conveyed to a trustee merely for convenience, and to save expense and trouble in the ultimate sale and conveyance, and that no conversion took place.

· Our attention has been called to the very instructive and soundly-reasoned case of *Crone* v. *Bolles,* — N. J. Eq., — (reported in 24 Atlantic

R., 237), in which a conversion of land into money was held to have occurred under direction contained in a will. There are several points of similarity between that case and this one, and perhaps as many important differences. The principles of law laid down in that case are the same recognized and applied by us in this one, the difference in result reached being due to difference in purport of instruments construed. Without stating the aspects in which the two instruments agree, or those in which they differ, we are content with simply saying that the Court in that case said that *the direction for sale was "imperative,"* and *did not depend on the "request or consent"* of the testator's children, while in this case there is *no imperative direction to sell,* and *the power to sell does. depend on the direction of the beneficiaries.*

Affirm the decree.