BENNETT *v.* GALLAHER *et al.*

*(Knoxville.* September Term, 1905.)

1. **WILLS.** .Equitable conversion of realty into personalty, how effected.

It is well settled that, in order to work an equitable conversion of realty into personalty, the intention of the testator to make such conversion must be clear and certain, and the direction to sell the land for that purpose must be imperative and unconditional.

Cases cited and approved: Bedford v. Bedford, 110 Tenn., 204; McElroy v. McElroy, 110 Tenn., 137; Wayne v. Fouts, 108 Tenn., 145; Wheless v. Wheless, 92 Tenn., 295; Green v. Davidson, 4 Baxt., 491.

2. **SAME.** Equitable conversion, not effected, when.

If, by the terms of a will, the direction to sell realty is made to depend upon contingencies or discretion is conferred upon the executor or trustee to sell for distribution or divide the property in kind, the intent of the testator to make conversion is not evident and positive, and none is effected.

Cases cited and approved: See first headnote.

3. **SAME.** Same. Case in judgment.

By his will the testator devised his property, real and personal, to his widow during her life, for the joint use of herself and their children, and empowered her to dispose of the personalty at her discretion, and upon the marriage of any child, to give to such child whatever property she might desire, preserving equality among the children, and authorized her to sell any real estate as she might think best, and provided that at her death any remaining property should be sold and divided equally among the children. During the lifetime of the widow, one of the daughters died, and her husband as administrator

Bennett v. Gallaher.

filed this bill, after the death of the widow, to recover as personalty the share of his wife upon the ground that the will worked an equitable conversion of realty into personalty.

*Held*:   The provision authorizing the widow to give to her children upon their marriage, "whatever property she might desire," empowered her to divide in kind the entire estate among the children, at her discretion, and therefore the doctrine of equitable conversion does not apply.

FROM ANDERSON.

Appeal from the Chancery Court of Anderson County. —HUGH G. KYLE, Chancellor.

WEBB, M'CLUNG & BAKER, for Bennett.

C. J. SAWYER and YOUNG & YOUNG, for Gallaher *et al.*

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Plaintiff files this bill, asserting a claim to the proceeds of sale of certain real estate under the will of R. G. W. Owens, upon the doctrine of equitable conversion. A demurrer was interposed to the bill, which was sustained by the chancellor, and the bill dismissed. Complainant appealed, and assigned as error the action of the chancellor in sustaining the demurrer.

The said R. G. W. Owens departed this life in Anderson county, Tennessee, in 1860, leaving valuable real and personal estate situated in Anderson county. The testator left surviving him his widow, Catherine Owens, and seven children, Martha Elizabeth, Mary Sibella, Sarah Ann, Amanda Jane, Josephine Bonaparte, Margaret M. D., and William Lones. Josephine Bonaparte, one of the daughters of the testator, intermarried with the complainant, James Bennett, in the year 1870, and died in the year 1885, leaving surviving her the complainant, her said husband, and four children.

The controversy in the case arises upon a proper construction of the will of the said Owens, which is in the words and figures following, to wit:

"It is my wish and desire, and I furthermore give and bequeath unto my beloved wife, Catherine, all of my personal property whatsoever, and all of my real estate that I may die seized and possessed of, to have and hold for her use, and the use and benefit of my children, Martha Elizabeth, Mary Sibella, Sarah Ann, Amanda Jane, Josephine Bonaparte, Margaret M. D., and William Lones, during her natural life; and I furthermore empower my said wife, Catherine, to sell and dispose of whatsoever personal property she may think best, and when each or any of my said children may marry, my wife, Catherine, may give to each one whatever property she may desire, so as to be equal among them; and I furthermore empower my wife, Catherine, to sell any real estate that she may think best, with the advice and

counsel of her friends, and at her death I wish whatever property there may be to be sold and equally divided among my above-named children. Lastly, I hereby nominate, constitute, and appoint my beloved wife, Catherine, executrix of my last will and testament."

The widow duly qualified as executrix, and used the property until November 11, 1904, when she died, without having disposed of any of the real estate.

It appears from the bill that after the death of the said Josephine Bonaparte, and during the life of the said Catherine Owens, the widow, the children of complainant and his wife, said Josephine Bonaparte, believing that the interest of their mother under the will of her father in the lands described had descended to them as realty, sold and conveyed the same for certain considerations, but without the knowledge or consent of the present complainant, their father. It is further alleged that complainant was appointed administrator of his wife's estate, and on February 14, 1905, commenced this suit for the purpose of collecting the interests of his deceased wife, which descended to her under the will of her father. The bill and the amended bill proceed upon the idea that under the provisions of the will of R. G. W. Owens the real estate therein devised, under the doctrine of equitable conversion, immediately upon the death of the testator, became personal property, and that his wife, the said Josephine Bonaparte, took an interest in the proceeds of the real estate as personal property, and that upon her death her interests in said personalty

passed to him as her husband and administrator. There were various assignments in the demurrer, but the cardinal question raised is whether, under the terms of said will, the real estate therein conveyed was converted into personalty upon the death of the testator.

The contention on behalf of the children of the said Josephine is that their interests in the estate of their grandfather descended to them as real estate, and that their father took no interest therein.

Mr. Pomeroy, in his work on Equity Jurisprudence (volume 3, par. 1162), says:

"Time from which conversion takes place. This, like all other questions of intention, must ultimately depend upon the provisions of the particular instrument. The instrument might in express terms contain an absolute direction to sell or to purchase at a specified future time; and if it created a trust to sell upon the happening of a specified event, which might or might not happen, then the conversion would only take place from the time of the happening of that event, but would take place when the event happened, exactly as though there had been an absolute direction to sell at that time. Subject to this general modification, the rule is well settled that the conversion takes place in wills as from the death of the testator."

Mr. Pritchard, in his work on Wills and Administration, in paragraph 457, bottom of page 425, says:

"And where the will directed the land to be sold on the death of testator's widow, and the proceeds to be di-

vided among his children, the personal representative of a child dying before the widow was held entitled to the share to which the child would have been entitled, had he survived the period fixed for the sale."

In 6 Am. & E. Enc. of Law (1st Ed.), p. 668, the author states that "conversion will in general be considered to take place in the case of a will from the death of the testator."

This question arose in the case of *Green* v. *Davidson,* 4 Baxt., 491. On page 493 of the opinion of this court the case is thus stated:

"By the will of Joseph Keller, this land is directed to be sold upon the death of the widow and converted into money, and the money to be divided among his children. This disposition of the land is absolute, and not dependent upon any condition, or subject to the discretion of his executors. In such case it seems well settled by authority that the estate passes to the legatees as personalty, and where any of the children, as in this case, died during the life of the widow, or before the land is to be sold, their share will vest in their personal representative. This proceeds upon the ground that the land is to be regarded as converted into money and disposed of by the will as money."

Citing authorities, and continuing:

"From this it results that neither the heirs of F. A. Keller (the son of Joseph Keller, one of the legatees under the will, who died before the life estate fell in) nor their guardian can in any respect recover, but his per-

sonal representative is the party entitled to the legacy under the will; that is, the share of the proceeds of the sale of the land." *McElroy* v. *McElroy,* 110 Tenn., 137, 73 S. W., 105; *Wheless* v. *Wheless,* 92 Tenn., 295, 21 S. W., 595.

In the case of *Bedford* v. *Bedford,* 110 Tenn., 204, 75 S. W., 1017, the limitation upon this doctrine of equitable conversion is illustrated. The court said as follows:

"The doctrine of conversion of real into personal property is recognized in this State, and the provision for the sale of real estate and distribution of the proceeds contained in a will is evidence sufficient to show the intention of the testator to make such conversion, and is effective to do so. But the intention to make the conversion must be clear and certain, and the direction to sell the land for that purpose imperative and unconditional. The intention must appear by explicit direction, and the conversion be obligatory upon the executor or trustee. If the direction to sell is made to depend upon contingencies, or discretion is given to the executors to sell for distribution, or divide the property in kind, the intent of the testator to make conversion is not sufficiently evident and positive, and none is effected." Citing *Wheless* v. *Wheless,* 92 Tenn., 296, 21 S. W., 595; *Wayne* v. *Fouts,* 108 Tenn., 145, 65 S. W., 471.

Waiving the question whether an equitable conversion takes place on the death of the life tenant, Mrs. Catherine Owens, or whether it takes place on the death of the testator, the paramount inquiry in this case is wheth-

er, under the provisions of this will, there was an equitable conversion of the real estate at any time.

"To operate as a conversion, the direction that the form of the property be changed must be imperative, in the sense of being positive and unmistakable. If the intention, as gathered from the whole instrument, be left in doubt, or the direction allows the trustee to sell or not as he deems best, the court is not at liberty to say that conversion has taken place, but must deal with the property according to its actual form and character." *Wheless* v. *Wheless,* 92 Tenn., 296, 21 S. W., 595.

An analysis of the will in question shows the following directions of the testator, viz.: (1) Personalty and realty given to widow during life, for the joint use of herself and the children. (2) Widow authorized to dispose of personalty at discretion. (3) On arrival at age of any child, widow authorized to give said child any property she (the widow) may desire, preserving however, equality among all the children in the distribution of said estate. (4) Widow empowered to sell any real estate she may think best, with the advice and counsel of her friends. (5) At the death of widow, whatever property there may be (remain) "I wish sold and equally divided among my children."

It is observed that the testator in this last clause directs the sale of whatever property may remain at the death of his widow, and the equal distribution of the proceeds among his children, but this clause must be considered in view of the entire context of the will, with

all of its provisions and limitations. It will be observed that the testator has provided, by the third clause of his will, that the widow may make settlements of any property she may think proper on any of the children on their arrival at age, and by the fourth clause the widow is empowered to sell any real estate she may think best with the advice and counsel of her friends. Of course, however, the proceeds of such sale would be impressed with the trust and limitations of the will, namely, for the joint use of the wife and children during the life of the wife; but under the third clause of the will it is apparent that the widow, during her life tenancy, is authorized to divide up the entire estate among her children, and thus leave no realty for an equitable conversion at her death. As already seen, it was adjudged in *Bedford* v. *Bedford* that no equitable conversion arose under the will of Benjamin W. Bedford, for the reason discretion was given his executors to sell his property for distribution, or to divide it in kind among his devisees. It equally appears from the will now under consideration that the widow of the testator was authorized to divide up this entire estate among her children at her discretion, preserving, however, equality in its distribution. It thus appears that the equitable conversion of the real estate into personalty at the termination of the life tenancy would be wholly defeated in the contingency the wife chose to exercise the discretion vested in her by the terms of the will. In order to work an equitable conversion, as we have seen, the rule is: The direction of

the testator must be absolute and imperative, and, if there is any doubt or contingency controlling the exercise of judgment on the part of the executor or trustee, there is no room for the application of this doctrine.

For the reasons stated, the decree of the chancellor, sustaining the demurrer is affirmed.