L. M. FOWLER, et al. v. H. E. PLUNK, et al.

Western Section.   March 23, 1928.

H. P. Wood, of Selmer, and H. L. Clark, of Brownsville, for appellant.

Anderson & White, of Jackson, and J. I. Galbraith, of Henderson, for appellee.

OWEN, J. The complainants L. M. Fowler and W. W. King have appealed from a decree of the chancery court of McNairy county dismissing their bill. The defendants are H. E. Plunk, D. F. Plunk and W. L. Plunk. Said defendants were in possession of 147 acres of land lying in the 8th Civil District of McNairy county and known as the Redden Fowler homeplace. On the 24th of May, 1890 Redden J. Fowler made and executed his last will and testament. This will was duly probated on the 4th day of January, 1894. Said will is in the following language:

"In the name of God, amen. I, Redden J. Fowler of the county of McNairy and State of Tennessee, being in sound mind and memory and considering the uncertainty of this frail and transitory life do therefore make, ordain, publish and declare this to be my last will and testament. After my lawful debts are paid and discharged the residue of my estate real and personal I give and bequeath unto my beloved wife so long as she may live the land and appurtenances situated thereon one tract of land lying in the 8th Civil District of McNairy county and State of Tennessee and/on the waters of Huggins Creek containing 147 acres in all and/at the death of my beloved wife I want the land and other property sold and equally divided between L. M. Fowler, W. W. King and G. W. Smith. Likewise I make my last will and testament hereby revoking all other wills by me made in witness thereof I have hereunto set my hand and seal and name this May 24, 1890.    Redden Fowler, Seal."

After the death of said Redden Fowler his widow resided upon the land devised until her death, which occurred the latter part of November, 1925. No executor was named in said will and no administrator was appointed for the estate of Redden Fowler. It appears that the complainant L. M. Fowler is a nephew of Redden Fowler and that Redden Fowler never had any children born to him, but he reared the complainant W. W. King and a man by the name of G. W. Smith. It appears that the nephew, complainant L. M. Fowler, also resided during his youth with his uncle, Redden Fowler.

After the death of Redden Fowler, G. W. Smith moved to parts unknown and had not been heard of for more than twenty years as shown by the record in this cause. On November 20, 1899 L. M. Fowler executed and delivered to one W. F. Rowsey a deed con-

veying to him (Rowsey) all the interest of every character that he (L. M. Fowler) had in and to the said tract of land formerly owned by Redden J. Fowler, containing 147 acres, the deed reciting "which tract of land was willed or devised to his wife to be held by her during her lifetime and at her death to descend to W. W. King, G. W. Smith and myself jointly." The deed also referred to the book and page in the county court where the will of Redden Fowler was recorded.

It appears that in 1898 a judgment was obtained against W. W. King in favor of one Galbraith. Execution was issued on this judgment and it was levied on the undivided reversionary interest of W. W. King in and to the tract of land, describing it as we have heretofore described it. The execution returned to the circuit court of McNairy county. Proper condemnation proceedings were had. The sheriff proceeded to sell the land as levied on and a deed was executed to the purchaser, Galbraith; and under the deeds made by the sheriff to Galbraith and by the complainant L. M. Fowler to W. F. Rowsey, conveyances were made until the three present defendants came into possession by warranty deeds of the tract of land in controversy.

Complainants sought also to have the will of Redden J. Fowler construed. Some depositions were taken and defendants filed their title papers. Defendants also insisted that they made valuable improvements upon the property that they had acquired and had paid their taxes; that a drainage ditch had been established and that the life tenant, Mrs. Fowler, was unable to meet the drainage taxes and she released about one-half of the tracts of land to the defendants on condition that they would pay all of the drainage taxes, which they have done.

The complainants insisted that by the terms of the will of Redden Fowler they were entitled to a one-third interest each in the proceeds of the sale of the property of Redden Fowler, to be sold after the death of his wife. They insisted that said land should be sold and the proceeds arising from the sale thereof should be equally divided between the two complainants and G. W. Smith, who was not made a party to this suit.

The defendants filed a demurrer to the bill, which was overruled, with permission to rely upon in the answer and at the hearing. This was done and the defendants further relied upon the doctrine of estoppel; that they were innocent purchasers for a valuable consideration; that complainant Fowler was estopped by his solemn deed; that he sold his interest in said tract of land for a valuable consideration; and the defendants insist at the time Fowler made his deed and the sheriff levied on complainant King's interest, that if the complainants did not have a vested interest at that time Fowler had misled the defendants and their predecessors in title by his

conveyance and to the prejudice of their rights and that he would be estopped by his solemn deed from now insisting that he had any interest in said tract of land. It is also insisted that the interest of King was of such a nature as that it was subject to the levy of an execution and that King was estopped and barred from any recovery.

The Chancellor upon the final hearing held that under the will and the facts of this cause, complainants were not entitled to any relief. The court found that G. W. Smith conveyed his interest in the land by deed and that he was not seeking any relief, the defendants having purchased the interest of Smith. The court was of opinion that whatever interest the complainant Fowler had in this estate passed by virtue of the deed executed by him and that he cannot now repudiate the same. He likewise found that King's interest was subject to execution and for this reason the purchaser at said sale acquired King's title or interest and King's contention could not be sustained.

The complainants excepted, prayed and were granted an appeal to this court, and perfected the same. Neither of complainants ever made any tender or offer to return the consideration that Fowler received for the conveyance that he executed or to satisfy the judgment that had been procured against King. The complainants have assigned three errors. The first error alleges that the court erred in decreeing and holding that complainants were not entitled to the relief sought in the original bill in this cause and in dismissing complainant's bill and taxing them with the cost of the cause.

The second error is the same as the first except that it specifies the complainant W. W. King, and the third error specifies L. M. Fowler, so the first error inserts complainants where No. 2 inserts W. W. King and No. 3 complainant L. M. Fowler.

The defendants have filed a motion to strike these assignments of error from the file on the ground that they do not comply with subsections 1 and 2 of Rule 11 of this court. It is insisted: "(a) There is no statement of the precise point raised by the pleadings and no statement of the substance of the decree of the court below with reference to the pages of the transcript whereon each appears;

"(b) There is no statement in the assignment of errors, of the errors of fact or law relied upon to reverse the decree of the Chancellor below showing specifically wherein the action complained of was erroneous and wherein it prejudiced the rights of the appellants, with reference to the pages of the record where the ruling of the court on matters constituting errors of law appear."

Rule 11, subsec. 2, of this court, found in Vol. 151, Tenn. Rep., p. 815, and in Vol. 1 of the reports of this court, provides that: assignment of errors shall state:

"(1) A statement of the nature and purpose of the case, and the precise points raised by the pleadings, with such reference thereto as may be necessary, the substance of the verdict and judgment thereon, or judgment without verdict, or decree, with reference to pages of the transcript whereon each appears.

"(2) A statement of the errors of fact or law relied upon to reverse or modify the same, showing specifically wherein the action complained of is erroneous, and how it prejudiced the rights of the appellant, or plaintiff in error, with references to the pages of the record where the ruling of the court on matters constituting errors of law appeared; and, in case it is an error of fact, to the pages of the record where the testimony relied upon to sustain the same is to be found."

We are of opinion that defendant's motion to strike must be sustained. National Packard Co. v. Neville, 144 Tenn., 700; Thurmond v. Whitaker, 1 Tenn. App., 111; Yellow Cab Co. v. Malof, 3 Tenn., p. 11.

Appellants' assignments are not specific and are entirely too general.

However, that no injustice may be done appellants, we have carefully read the transcript in this cause and the briefs of counsel and we are of opinion that the Chancellor committed no error in rendering the decree that was rendered in this cause. We are of opinion, under the terms of the will of Redden Fowler, his wife took a life estate in the 147 acres of land and complainants and G. W. Smith took the remainder interest equally.

There was no absolute direction on the part of the testator that the land had to be sold after the death of his widow, and the doctrine of equitable conversion of land into personalty does not apply.

In Wheless v. Wheless, 92 Tenn., 296, 21 S. W., 595, it is said: "To operate as a conversion, the direction that the form of the property be changed must be imperative in the sense of being positive and unmistakable. If the intention as gathered from the whole instrument, be left in doubt or the direction allows the trustee to sell or not, as he deems best, the court is not at liberty to say that the conversion has taken place, but must deal with the property according to its actual form and character."

In Bennett v. Gallagher et al., 115 Tenn., 568, 92 S. W., 66, it was held that "it is well settled in order to work an equitable conversion of realty into personalty, the intention of the testator to make such a conversion must be clear and certain, and the direction to sell the land for that purpose must be imperative and intentional," citing with approval Bedford v. Bedford, 110 Tenn., 204; McElroy v. McElroy, 110 Tenn., 137; Wayne v. Fout, 108 Tenn.,

145; Wheless v. Wheless, 92 Tenn., 295; Green v. Davidson, 4 Bax., 491.

The doctrine of equitable conversion is the outgrowth of the old maxim that equity regards that as done which ought to have been done. It is not a fixed rule of law but proceeds upon equitable principles, so that its application will be somewhat affected by the connection in which it is invoked. It is entirely a creation of and depends wholly upon rules of equity. It is most frequently applied in solving questions concerning the validity and execution of trusts in determining the legal character of the interests of beneficiaries, the devolution of property as between real and personal representatives and for other similar purposes. But being altogether a doctrine of equity designed to promote justice by carrying out the purpose of a testator, vendor or other person, it should be admitted for the accomplishment of equitable results only and in its application constant watchfulness is required to guard against a tendency to make of it a formal rule de jure, regardless of its real purpose and necessity. Moreover, it should never be overlooked that there is no real conversion, for the purpose remains all the time in fact realty or personalty just as it was; but for the purpose of the will or other instrument so far as may be necessary and only so far, it is treated in contemplation of law as if it had been converted.

The testator in the instant case did not give a command or absolute direction that said land should be sold at the death of his wife, but a mere wish by stating "I want."

We are of opinion that an equitable conversion did not occur; but should the will be construed so as to apply the doctrine of equitable conversion the complainants under the state of this record would be in no better condition. We are of opinion that King's interest was subject to execution at the time the levy was made by his creditor.

"A clause in a will directing land to be converted into money does not of its own force operate as a conversion without some action, and thus place it beyond the lien of a judgment and an execution issued to enforce it." 6 R. C. L., 1076; Eneberg v. Carter, 12 S. W., 522; 14 A. S. R., 664.

Where the direction to sell is imperative it has never been doubted that the devisee or legatee for whose benefit a sale is thus directed takes by the will an immediate vested interest. In such a case the interest in the proceeds of the sale is as much a vested interest as if the land itself had been immediately and directly devised to the devisee. 6 R. C. L., 1079.

"For the purpose of determining the equitable rights of heirs to the present possession of land which has been directed to be sold and converted into money at some future time, it has been held that until the sale takes place the land retains its character as real-

ty with all the rights and incidents which attach thereto.'' 6 R. C. L., 1080.

The pertinent provision of our statute law with respect to what is property and what property is liable for one's debts is as follows:

''Every debtor's property, except such as may be specially exempt by law, is assets for the satisfaction of all his just debts.'' Code, sec. 3985.

''This word 'property' includes both personal and real property; the words 'personal property' include money, goods, chattels, things in action and evidences of debt; 'real estate,' 'real property,' 'lands' include land, easements and hereditaments and all rights thereto and interests therein, equitable as well as legal.'' Shannon's Code, sec. 63.

''All judgments and decrees of any of the judicial tribunals of this State, for money, may be enforced by execution.'' Shannon's Code, sec. 4728.

''Executions issue against the goods and chattels, lands and tenements, of the defendant.'' Shannon's Code, sec. 4729.

''A remainder estate in land or personalty is subject to attachment and execution.'' Lockwood v. Nye, 2 Swan, 515; Washburn v. R. R., 3 Head., 638; Perkins v. Clack, 3 Head., 735; Puryear v. Edmondson, 4 Heisk., 58; Davis v. Baucum, 10 Heisk., 408; Sturm v. White, 8 Bax., 199; Pennybaker v. Tomlinson, 1 Tenn. Chan., 115.

Whatever interest complainant Fowler had in said 147 acres, he disposed of by solemn deed and for a valuable consideration. The proof in the case is that the tract of land was worth about $300 at the time of the death of Redden Fowler. It was burdened with a life estate that extended over a period of more than thirty years, so the remainder interest was of no great value, probably worth $150. Fowler received more than $100 for his share or interest.

A conveyance of the land by the beneficiaries is a reconversion since they thereby part with their proceeds of the sale as well as their right to the land and cease to have any interest in the execution of the power. 6 R. C. L., 1091.

Where there is an implied power of sale but no designation of a person by whom the sale should be made a conversion is effected as of the time when the sale should have been made. 13 C. J., 871.

Under the operation of the doctrine of equitable conversion the property is treated as realty or personalty as the case may be only for certain purposes, mainly as determining succession; except that for other purposes than those expressed in the will the property remains in its original shape; nor can the doctrine be invoked by persons whose claims or rights are merely incidental. 13 C. J., 881; McElroy v. McElroy, 110 Tenn., 137.

Where there is a mere direction that the real estate be sold and proceeds distributed without passing legal title to the executor (as

in the case at bar) the title is in the beneficiary or heir until the sale. 13 C. J., 882; Lantz v. Caraway, 50 L. R. A. (N. S.), 32.

The title to the land during the interim between the death of the testator and the time fixed for conversion is neither in abeyance nor in the life tenant but passes either to the executor or to the legatees or descends to the heirs of the testator. 13 C. J., 883; Lantz v. Caraway, 50 L. R. A. (N. S.), 32.

It has been held that where a will directs that real property be sold and the proceeds distributed, this does not work a conversion of the real estate and the personalty in such a sense as to render invalid a mortgage of the real estate as such. 13 C. J., 884.

The case of Lantz v. Caraway, supra, was decided by the Supreme Court of Indiana on November 25, 1913, and holds that "in the absence of an intention expressed in the will to vest title in the executor, the title to realty directed therein to be sold and the proceeds divided passes to the beneficiaries, subject to the rights of the executor to sell and that the doctrine of equitable conversion will not preclude such a beneficiary from being counted as a landowner." Numerous authorities are collated by the author with full notes in support of the doctrine announced in Lantz v. Caraway, supra.

It results that the assignments of error are stricken and the judgment of the lower court is in all things affirmed. Appellants will pay the cost of the cause, for which execution will issue, it appearing that they filed an oath in lieu of cost bond.

Heiskell and Senter, JJ., concur.