WAYNE  v.  FOUTS.

(*Knoxville.*  November  16,  1901.)

1. EQUITABLE CONVERSION. *Doctrine of.*

The doctrine of equitable conversion, by which, under certain circumstances, realty is regarded in equity as personalty, and personalty as realty, is firmly fixed in the jurisprudence of this country and England. It is founded on the maxim, "Equity regards that as done which ought to be done." Through this doctrine Courts of Equity treat as land money directed to be invested in land, and as money land directed to be sold for money, and the direction by which the notional transmutation is accomplished may be made by will, or by deed, or settlement, or other contract *inter vivos.* (*Post, pp. 147, 148.*)

Case cited: Wheless v. Wheless, 92 Tenn., 295.

2. SAME. *Direction for, must be imperative.*

But to be effective, the direction, in whatever manner made, that the form of the property be actually changed must be imperative, in the sense of being positive and unmistakable. (*Post. p. 148.*)

Case cited: Wheless v. Wheless, 92 Tenn., 295.

3. SAME. *Example of, by will.*

Testator bequeathed "all the balance" of his property, "real and personal," to his two sisters, a brother, and the children of a deceased sister, one-fourth each. He then directs that "said property, real and personal, . . . . shall be sold to the best advantage, and on such terms as my executor shall deem advisable, and the proceeds paid over to the devisees and legatees hereinabove indicated," and appoints an executor, investing him with "full power and authority to sell either personal or real estate under this will." Both real and personal estate passed under the will.

*Held:* Real estate passing under this will was held by the devisees from the date that the will went into effect as personalty and subject, upon the death of any of them, before

24 P—10

sale thereof had been made by the executor, to the laws of descent and distribution applicable to personal estate. (*Post, pp. 149, 150.*)

Case cited; Cobb v. Denton, 6 Bax., 237.

4. SAME. *Same.*

Under this will the conversion of the real estate into personalty took place immediately upon the testator's death. The direction to the executor to sell the realty and distribute the proceeds is explicit and positive—imperative in the legal sense, and imposed a duty to do so. The fact that, under the will, the legal title and beneficial interest in the real estate passed to the same persons does not prevent the equitable conversion so clearly intended and provided for by the testator. (*Post, pp. 150, 151.*)

5. SAME. *Husband takes realty of wife equitably converted.*

The husband of one of the female devisees under this will takes *jure mariti,* as personalty, her interest in the real estate upon her death before sale thereof by the executor to the exclusion of her heirs. (*Post, pp. 152–154.*)

Cases cited: Hays v. Bright, 11 Heis., 325; Loftus v. Penn., 1 Swan, 445; Trafford v. Express Co., 8 Lea, 111; Smalling v. King, 5 Lea, 590; Moore *ex parte,* 3 Head, 171; Cowden v. Pitts, 2 Bax., 59.

6. SAME. *Not effected by unexecuted decree of sale.*

Real estate is not converted into personalty by decree for its sale. It remains real estate and descends as such until sale under the decree has been made and confirmed.

Cases cited: Moore *ex parte,* 3 Head, 171; Cowden v. Pitts, 2 Bax., 59; Smalling v. Kings, 5 Lea, 590.

7. RECONVERSION. *Right and power of and how exercised.*

The beneficial owner of real estate that has been converted by virtue of the doctrine of equitable conversion into personalty, has undoubted power by his words and acts to reconvert it into realty and stamp it with the character of realty at any time before actual sale thereof. To have this effect, however, the words and acts of the beneficial owner must be unequivocal and must clearly indicate his purpose and election to countermand the trust and relieve the trustee of duty. (*Post, pp. 154–156.*)

8. SAME. *Concurrence of joint beneficiaries essential.*

Concurrence of all the joint beneficiaries is essential to the re-conversion of real estate that has been stamped with the character of personalty by equitable conversion. One beneficiary cannot, without the concurrence of all, reconvert even his own interest in the property. (*Post, pp. 156, 157.*)

9. SAME. *Facts that do not work.*

The refusal or delay of the executor to make sale of realty that , under the provisions of the will has been equitably converted and stamped with the character of personalty does not operate to reconvert it into realty. Nor does the act of the beneficial owners in seeking sale of same by the court describing the property in the bill as "land" or "real estate" effect a recon-version. (*Post. pp. 158-160.*)

---

## FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

PRITCHARD & SIZER for Wayne.

R. P. WOODARD, DODSON & DODSON, PAYNE & PAYNE and J. L. FOUST for Fouts.

CALDWELL, J. This cause involves questions of equitable conversion of realty into personalty, and of equitable re-conversion of the same personalty into its original form as realty.

No doctrine, within its proper scope, is more

firmly fixed in the jurisprudence of England and America than that of equitable conversion, by which, under certain circumstances, realty is regarded in equity as personalty, and personalty as realty. It is founded on the maxim: "Equity regards that as done which ought to be done." Through this doctrine, Courts of equity treat as land, money directed to be invested in land, and as money, land directed to be sold for money, and the direction by which the notional transmutation is accomplished, may be made by will, or by deed, or settlement, or other contract *inter vivos.* Adams, Eq., *135, *136; 1 Story's Eq., Sec. 790; 1 Pomeroy's Eq., Sec. 371; 2 Jarman on Wills (R. & T.), 170, 171, 172; *Fletcher* v. *Ashburner,* 1 Bro. Ch. Cas., 497; *Craig* v. *Leslie,* 3 Wheaton, 563; *Lorillard* v. *Costa,* 5 Paige, 218; *Hawley* v. *James,* Ib., 444; *Allison* v. *Wilson,* 13 S. & R., 332; *Wheless* v. *Wheless,* 92 Tenn., 295.

However made, to be effective as a conversion, the direction that the form of the property be actually changed must be imperative, in the sense of being positive and unmistakable. 2 Underhill on Wills, Sec. 696; 2 Story's Eq., Sec. 1214; 3 Pomeroy's Eq., Secs. 1159 and 1160; Adams Eq., 136; *Wait's Exrs.* v. *Page,* 19 N. J. Eq., 375; *Ford* v. *Ford,* 70 Wis., 19; *Hobson* v. *Hale,* 95 N. Y., 598; *Wheless* v. *Wheless, supra,* 296, 297.

Wayne *v.* Fouts.

The question of conversion or no conversion, in the present cause, arises upon a construction of parts of the second and third items of the will of Oliver P. Fouts, which are as follows: "I will, devise, and bequeath all the balance of my property, real and personal, to my two sisters, my brother, and the children of my deceased sister, formerly the wife of R. M. Tankesley, my two sisters to have one-fourth each, my brother one-fourth, and the children of my deceased sister to share the other fourth equally. Said property, real and personal, . . . shall be sold to the best advantage, and on such terms as my executor shall deem advisable, and the proceeds paid over to the devisees and legatees hereinabove indicated. . . . I nominate and appoint my friend, Fred F. Wiehl, executor of this will, . . . and give him full power and authority to sell either personal or real estate under this will. . . ."

After a careful consideration of the testator's words, it is perfectly clear to our minds that he intended that his executor should sell the real estate referred to, convert it into money, and distribute the money, as such, among the designated beneficiaries, and in the proportions mentioned. It is true that, in the disposing clause, he speaks of the property dealt with as both "real and personal," and that he gives a definite undivided part thereof to each of the beneficiaries, yet in

the next sentence he provides that all of "said property, real and personal, *shall be sold*" by his executor, and that "the proceeds (be) paid over" to those indicated. If it be conceived that the two provisions are in conflict, the last named being subsequent in position, will prevail. It undoubtedly made the executor a trustee, with *duty* of selling the property and distributing the proceeds of sale. *Cobb* v. *Denton*, 6 Bax., 237. It certainly was not contemplated that the beneficiaries should take and hold the property in *specie,* but, on the contrary, that they should only receive the proceeds of its sale in money. In other words, the direction to reduce all the property to money, was explicit and positive—imperative in the legal sense; and, being so, under the authorities heretofore cited, it manifestly wrought an equitable conversion of the realty into personalty.

Since the sale contemplated was not directed to be made at any specified time in the future, and was not conditioned upon the happening of any contingent event, the conversion took place upon the death of the testator, concurrently with the initial operation of his will. 3 Pomeroy's Eq., Sec. 1162; *Wheless* v. *Wheless, supra,* 298.

The fact that the legal title and the beneficial interest passed to the same persons by the terms of the will, did not, of itself, prevent a conversion; for, notwithstanding that fact, it is en-

tirely obvious that the testator intended the executor to convert the land into money, and that intention, being lawful, must prevail, unless and until it shall appear that those benefitted made an election to retain the realty as such, thereby affecting an equitable reconversion. The coincidence of the legal title and beneficial interest in the same individuals until sale could · be made, was a part of the testamentary scheme, and so long as they acquiesced in the provision as made, the *duty* of converting the land into money rested upon the executor, and the notional change of the character of the property was effective for all purposes of transmission and descent.

To hold that such coincidence of itself defeated the equitable conversion, would be to destroy the most important feature in the scheme of the will, and reverse the universally acknowledged rule that the expressed intention of the testator must control, when not in contravention of some principle of law or sound public policy.

As well said by Judge Wilson, speaking for the Court of Chancery Appeals, "the will, by force of its own specific terms, effected its own equitable result, irrespective of the mere personal lodgment (for the time being) of the legal title."

What has thus far been said, meets the objections raised in the first and second assignments of error.

To present that raised in the next, and last, one, a further statement of facts is required.

The real estate disposed of by the second item of the will, and here concerned, consisted of an undivided one-half interest in the Union Stock Yards, of Chattanooga, and a small lot near the Central depot, in that city.

The original bill in this cause was filed by one of the sisters of the testator, and her husband, against the other co-tenant of the stock yards, the executor, and the other devisees and legatees under the will, to compel a settlement of the executor's accounts, and to sell the real estate of the testator, including that just mentioned, for a division of proceeds among those entitled under the will to receive the same.

In due course of procedure a sale was ordered, but before it actually took place, Mrs. Webster, one of the testator's sisters, and a defendant to the suit, died, childless, leaving, however, a husband by whom she had born a child, that died before she did. The sale went on, the stock yards bringing $26,000.00, and the other lot $2,800.00. One-half of the former sum, and all of the latter, in the aggregate $15,800.00, represented the real estate disposed of by the second item of the will. Had Mrs. Webster lived, she would have been entitled to receive one-fourth of this $15,-800.00; having died, her husband, as such, and

as administrator, intervened by petition and claimed her share for himself.

If her interest at the time of her death was personalty in legal contemplation, he is now entitled to one-fourth of the fund, all of her part, as his own *jure mariti* (*Hays* v. *Bright,* 11 Heis., 325; *Loftus* v. *Penn.,* 1 Swan., 445; *Trafford* v. *Express Co.,* 8 Lea, 111, 112; *Smalling* v. *King,* 5 Lea, 590), but if it was realty, he is entitled to only a life estate, as tenant by the courtesy, and the remainder belongs to his wife's heirs, who are now making this contest with him.

Aside from the question of equitable conversion, the interest of Mrs. Webster at the time of her death, would unquestionably have been realty, and subject to descent as such; for the order of sale, which had not been executed at that time, was not of itself sufficient to convert the land into personalty. Sale and confirmation would have been necessary to accomplish that result, and these having occurred after her death, the proceeds would follow the same course that the land would otherwise have taken. Moore, *ex parte,* 3 Head, 171; *Cowden* v. *Pitts,* 2 Bax., 59; *Smalling* v. *King,* 5 Lea, 590.

The question of equitable conversion in the first instance, and simultaneously with the death of the testator, and that, too, notwithstanding the presence of the legal title and beneficial interest in the same persons, however, has already been

decided against these contestants; consequently, Mrs. Webster's interest in the land, like that of the other beneficiaries, was from that moment effectually impressed with the character of personalty, and it was of that class when she died, unless something occurred in the meantime to work a reconversion, which has been defined as "that notional or imaginary process by which a prior constructive conversion is annulled and taken away, and the converted property restored in contemplation of equity to its original actual quality." Snell's Principles, Eq., 160; 3 Pomeroy's Eq., Sec. 175.

It was clearly competent for those concerned to bring about a reconversion at any time before the realty devised was actually converted into personalty; that is, it was, beyond question, within their power to waive the executor's obligation to sell, or to countermand the trust, and by election, on their part, take the land to themselves in its original character, as realty. The mere existence of this unquestionable power, however, is of no special efficacy in itself. It must have been exercised; the election must, in fact and unmistakably, have been made in the lifetime of Mrs. Webster to have accomplished a reconversion.

"Where the trust is countermanded by subsequent owners, their act is denominated reconversion. And such act must be equally unequivocal with the original trust." Adams Eq., *136, *137.

Another author says: "But, although a new character may have been, in plain and unequivocal terms, impressed upon property by means of a trust for conversion, yet such constructive quality is liable to be determined by the act of the person, or persons, beneficially entitled, who may, at any time before its conversion, *de facto,* elect to take the property in its actual state. . . . The expressions, or acts, declaratory of such an intention (to so elect), however, though it is said they may be slight, must be unequivocal." 2 Jar. on Wills (R. & T.), 188; see also, 3 Pom. Eq., Sec. 1177.

In an early case before the Federal Supreme Court, Mr. Justice Washington, speaking on this subject for that tribunal, observed: "Thus, when the whole beneficial interest in the money in the one case, or in the land in the other, belongs to the person for whose use it is given, a Court of equity will not compel the trustee to execute the trust against the wishes of the *cestui que trust;* but will permit him to take the money or land, if he elect to do so, before the conversion has actually been made; and this election he may make, as well by acts or declarations, clearly indicating a determination to that effect, as by an application to a Court of equity. It is this election, and not the mere right to make it, which changes the character of the estate so as to make it real or personal, at the will of the party

entitled to the beneficial interest. If this election be not made in time to stamp the property with a character different from that which the will, or other instrument gives it, the latter accompanies it, with all its legal consequences, into the hands of those entitled to it in that character. So that, in the case of the death of the *cestui que trust,* without having determined his election, the property will pass to his heirs or personal representatives, in the same manner as it would have done had the trust been executed and the conversion actually made in his lifetime." *Craig* v. *Leslie,* 3 Wheat, 578, 579.

There being several beneficiaries in the present case, it was indispensable to a re-conversion that all of them concur in the acts constituting an election to retain the land as such. *Baker* v. *Carpenbarger,* 15 Ill., 103, S. C., 58; Am. Dec., 600; 2 Jar. on Wills, 191, 192; 7. Am. & Eng. Ency. Law (2d ed.), 481.

Jarman, on the pages just cited, observes: "That in order to amount to an election to take property in its actual, as contradistinguished from its eventual, or destined, state, the act must be such as to absolutely determine and extinguish the converting trust, and hence it would seem to follow, that where two or more persons are interested in the property, it is not in the power of any one co-proprietor to change its character, in regard even to his own share; for, as the act of the whole

would be requisite to put an end to the trust, nothing less will suffice to impress upon the property a transmissible quality, foreign to that which it had received from the testator." 2 Jar. on Wills, 191, 192.

Of course, the burden of establishing a countermand of the trust, a reconversion of the estate, is upon those who assert it. They must show the election claimed, by proof of some unequivocal act or declaration of the beneficiaries, evincing an intention on their part to extinguish the trust and terminate the equitable character impressed upon the property in the first instance by the instrument conferring the benefit.

It does not appear that the persons interested in the present devise ever had a conference in reference to a reconversion of this property, or even spoke a word or entertained a thought favorable to such a result. They are not shown to have made any declaration on the subject, or to have indicated in any way that they wished to countermand the direction of the testator, or that they perferred the land to the proceeds of its sale.

All they seem to have said or done in the matter was said and done in the original pleadings in this cause; and there, in the bill and answers, they simply referred to the devised property as "land," or "real estate," and asked, on the one hand, and agreed, on the other, that

such property, the "land," or "real estate," be sold by decree of Court, and the proceeds distributed among those entitled to receive the same under the will. This, to our minds, was an affirmance, rather than a disaffirmance, of the trust.

No more did the decree of sale work a reconversion of the property. The question of reconversion was not presented in the pleadings, nor adjudged in the decree. The latter is in the usual form of a decree directing the sale of land for division among the owners; and, as it must have done in any event, like the pleadings, it referred to the property as "land," or "real estate." For the purposes of sale, "land," or "real estate," was the only appropriate designation of the property in either the pleadings or the decree, such being its nature in fact, notwithstanding the equitable conversion by the will. It is manifest, therefore, that the decree cannot be properly construed as adjudging, directly or indirectly, the question of reconversion; and that it cannot, though unappealed from, now be made available as *res adjudicata* of that question against the present contention of Webster.

Nor does the failure of the executor to sell the property, as he was directed to do, or the fact that the Court was asked to make the sale, militate in any degree against the continued survival of the original equitable conversion. The

neglect, or omission, of a trustee cannot defeat or even impair such a trust. On the contrary, his non-action gives the *cestui que trust* an incontrovertible right to resort to a Court of equity one of whose peculiar and cherished functions is to see that no valid trust shall fail for want of a trustee, or fall short of proper enforcement on account of any conduct of his.

The Chancellor, in his decree on Webster's petition, adjudged that the realty involved was equitably "converted into personalty" by the will, "but that it was reconverted into real estate" at the time of the death of petitioner's wife, Mrs. Webster, "by her, and his acts, and the decree in the cause"; and consequently, that her proportionate part of the money, afterwards realized by the sale of the property, became his for life only as tenant by the courtesy, and that the remainder passed to her heirs at law.

The Court of Chancery Appeals held, with the Chancellor, as we have done, that the direction of the will wrought an equitable conversion of the realty into personalty, and it held against him, as we have done, that there was no reconversion. And thereupon the latter tribunal rightly adjudged that Mrs. Webster's interest at her death, before the actual sale, was personalty in an equitable sense, and as such passed to him absolutely *jure mariti.*

Concerning "the acts" of Webster and his wife,

and "the decree in the (original) cause," which, combined, the Chancellor thought established a reconversion, it is now only necessary to say, as has already been indicated, that their "acts" consisted alone in their reference in pleading to the property devised, as "land," or "real estate," and their assent to its sale by the Court, and that the "decree" of sale was not intended to have, and under the pleadings, however intended, could not have, had any influence upon the question of reconversion.

Affirmed.