T. K. BARNES *et al. v.* A. D. REDMOND *et al.*

(*Nashville.*    December Term, 1912.)

1. DESCENT AND DISTRIBUTION. Second cousin as only heir
   of a predeceased first cousin to intestate will inherit the share
   of his such parent in intestate's land where the next in degree
   of kinship surviving the intestate were his first cousins.

   Under the statute (Shannon's Code, section 4163, subdivision 2,
   subsection c), providing that if an intestate die without issue,
   and his father and mother are both dead, his land shall be in-
   herited by their heirs in equal degree, "or representing those
   in equal degree of relationship to the intestate," where the
   next in degree of kinship surviving intestate were her first
   cousins, and the second in degree of kinship surviving her were
   her second cousins, the children and descendants of predeceased
   first cousins, the intestate's second cousin, who was the only
   heir and representative of a predeceased first cousin, is entitled
   to the same interest in the intestate's land as though he were
   a first cousin, and takes the interest that would have de-
   scended to his parent, the predeceased first cousin, if he had
   survived the intestate; for the statute contemplates that, where
   an intestate's parents both predeceased him, the heirs of each
   parent shall take precisely as if both parents had survived the
   intestate, and then died intestate themselves. (*Post, pp.* 46-51.),
   Code cited and construed: Sec. 4163, subdiv. 2, subsec. c. (S.);
   sec. 3269 (M. & V.); sec. 2426, subdiv. 2 (T. & S. and 1858).
   Cases cited and approved: Miller Wills, 2 Lea, 62; Alexander v.
   Wallace, 8 Lea, 571; Selby v. Hollingsworth, 13 Lea, 145, 147;
   Forrest v. Porch, 100 Tenn., 395, 396.

2. SAME. Proceeds of partition sale after intestate's death go to
   heirs and not to distributees of intestate, because the conver-
   sion occurred after his death.

   The proceeds of the sale of land in partition proceedings insti-
   tuted after the intestate's death, by some of his heirs against

the others, will go to the intestate's heirs in the proportion to the respective share of each in accordance with the statute (Shannons Code, section 4163) providing how the land of an intestate shall descend or be inherited, and not according to the statute (Shannon's Code, sections 4172, 4173) relating to the distribution of personal property; for the conclusive reason that the conversion of the land into personalty did not occur until after the death of the intestate, and there was no conversion, equitable or otherwise, before his death. (*Post, pp.* 51-53.)

Code cited and construed: Secs. 4163, 4172, 4173 (S.); secs. 3268-3270, 3278, 3279 (M. & V.); secs. 2420, 2429, 2430 (T. & S. and 1858).

Case cited and approved: *Ex parte* Moore, 3 Head, 171.

Cases cited and distinguished: Satterfield v. Mayes, 11 Humph., 59; Cowden v. Pitts, 2 Bax., 59; Wheless v. Wheless, 92 Tenn., 293; Wayne v. Fouts, 108 Tenn., 145.

---

FROM WILLIAMSON.

---

Appeal from the Chancery Court of Williamson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court. —DOUGLASS WIKLE, Chancellor.

ROBERT O. ALLEN, for complainants.

J. C. EGGLESTON, for defendants.

---

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

Mattie Barnes died in October, 1907, in Williamson county, Tenn., intestate, and seized and possessed of

two tracts of land located in that county. One tract contained about twenty acres, the other about 101 acres. This land became the property of the intestate under our statute of descent upon the death of her brother, Joseph Barnes, who left him surviving no wife, child, or children, never having been married, the intestate being the only heir at law. Joseph Barnes acquired the land during his life by purchase.

The present suit is a partition proceeding for the purpose of selling the two tracts of land. All the parties to the cause were *sui juris;* all were of one accord that a sale of the land and a division of its proceeds were proper.

The land was sold under decree of court, and the contest here is upon the correct distribution of its proceeds. No contention is here made that the land came to the ownership of the intestate by gift, devise, or descent from a parent. From a report made under order of the court by the clerk and master, which report was not excepted to, and was confirmed by the chancellor, it appears that:

Intestate left surviving her neither brother nor sister, mother nor father, uncle nor aunt.

The next in degree of kinship who survived intestate were her first cousins, children respectively of her uncles and aunts, and there also survived intestate divers descendants of her deceased first cousins.

Some of the first cousins and some of the descendants of deceased first cousins who survived intestate were of kin to her through her father. Of these there was a

large number, and they were widely scattered in places of residence. These were descendants of seven uncles and aunts who were respectively brothers and sisters of her father. Fortunately, none of these appealed from the decree of the chancellor, and they need not be further considered, except to say that the decree set apart one-half of the net fund for them, and made distribution thereof among them.

The other one-half of the net fund was decreed to the first cousins and the descendants of such as were of kin to the intestate through her mother. The mother of intestate had two brothers. One of these was Lee Hamer, who predeceased intestate and left surviving him eight children, each of whom survived intestate. The other brother of intestate's mother was Reese Hamer, who had four children. Two of these survived intestate and two did not; but each of the latter left a child, and one of these children, Robert Cook, is the only one of all the parties in interest who appealed from the decree of the chancellor to the court of civil appeals and perfected his appeal. His appeal did not, of course, disturb the decree in so far as the interests of those persons to whom intestate was of kin through her father were concerned. But his appeal did bring up for review the whole decree in so far as the interests of those who were of kin through her mother to the intestate were concerned. Subsection C of subdivision 2 of section 4163 controls in fixing the interest to which Robert Cook was entitled, and his interest may be most clearly worked out in this way:

If her father and mother had survived intestate, each of them would have been entitled to an undivided one-half interest in the two tracts of land. Therefore, under the statute, upon their failure to survive intestate, one undivided one-half interest goes to the heirs of the father, and the other such interest to the heirs of the mother. With that half which would have gone to the mother, we are now to deal.

She did not survive intestate, and, having no other children than intestate, upon the death of the latter, that half interest in the land which would have gone to the mother had she survived intestate, passed by the statute to the heirs at law of intestate's mother. These heirs were the children of Lee Hamer, a brother of intestate's mother, eight in number, and the children and grandchildren of Reese Hamer, a brother of intestate's mother, four in number, being two children and two grandchildren; one of the latter being Robert Cook.

Now, it happens that each of these grandchildren is entitled to the same interest as each of the children because each grandchild is the sole representative of a deceased child, and from this it results that Robert Cook, while only a second cousin of intestate, has the same interest he would have if he were a first cousin, because he represents his mother, a deceased daughter of Reese Hamer, and the same is true of the other grandchild, Rome Hamer, sole representative of another deceased daughter of Reese Hamer. It then follows under the statute that each of the eight children of Lee

127 Tenn.—4

Hamer became entitled on intestate's death to 1/8 of 1/4 of the land, or 1/32 thereof, because, if Lee Hamer had survived intestate and her mother, he would have been entitled to 1/4 of the land; and it follows further that each of his eight children are entitled to 1/8 of 1/4, or 1/32, of the net purchase money on distribution.

It also follows that each of the two children and each of the two grandchildren of Reese Hamer became entitled, on intestate's death, to 1/4 of 1/4 of the land, or 1/16 thereof, because, if Reese Hamer had survived intestate and her mother, he would have been entitled to 1/4 of the land; and of course it also follows that each of the two children and each of the two grandchildren of Reese Hamer, one of the latter being Robert Cook, is entitled to 1/4 of 1/4 of the net amount of purchase money for distribution, or to 1/16 thereof. See Wills of John D. and Joseph Miller, 2 Lea, 62; Alexander v. Wallace, 8 Lea, 571; Selby v. Hollingsworth, 13 Lea, 147.

In the construction of the Miller will, supra, this court said:

"If either parent be dead, the surviving parent will take under the first subdivision. If both be dead, the law contemplates that the heirs of each shall take precisely as if each had taken when alive and then died."

In *Selby* v. *Hollingsworth,* 13 Lea, 145, 147, it was said:

"The heirs of Louis Selby, Jr., on the part of his mother, who can take under the statute, are only such heirs as would have inherited from the mother if she

had survived the son and then died; for such heirs would be the only heirs who could be in equal degree, or representing those who are in equal degree to the intestate."

And further in that opinion:

"The statute, itself, shows what is meant by representation by section 2420, subsection 1 (Code 1858) which defines the representation of lineal descendants."

And in *Alexander* v. *Wallace et al.*, 8 Lea, 571, it was said:

"The heirs of the testator, by the laws in force at his death, to inherit the realty, were the issue of his deceased brothers and sisters; such issue in each descending line taking by way of representation of a deceased parent, and therefore *per stirpes,* without any limit to the representation." See, also, *Forrest* v. *Porch,* 100 Tenn., 395-396, 45 S. W., 676.

The second insistence of the petition is that the partition proceedings, and sale of the land, was operative as an equitable conversion of the land into personalty, and that the proceeds must be distributed under the law controlling the descent of personal property, and that the distribution should therefore be under subsection 7 of section 4172, Shannon's Code, and that under section 4173 of Shannon's Code, in the descent of personal property, there is no representation among collaterals after brothers' and sisters' children, and to sustain this insistence the following cases are cited: *Ex parte Moore,* 3 Head, 171; *Cowden* v. *Pitts,* 2 Baxt., 59; *Satterfield* v. *Maues.* 11 Humph., 59; *Wheless* v. *Wheless.*

92 Tenn., 293, 21 S. W., 595; *Wayne* v. *Fouts,* 108 Tenn., 145, 65 S. W., 471.

A conclusive answer to this insistence is that the conversion did not occur during the life of the intestate. The precise point was decided in *Ex parte Moore et ux.,* 3 Head, 171. The statute of descent, therefore, upon the death of the intestate cast the title to the land as real estate upon such of her next of kin as, under the terms of the statute, were entitled thereto, and, upon the conversion of the land into personalty by the sale, each owner of an undivided interest in the land became entitled to his or her proportionate part of the proceeds. As a matter of course, if the conversion had occurred before the death of the intestate, the statutes regulating the descent of personalty would have applied. Upon the facts of this case, the second insistence made by the petition is unsound.

We understand the opinion of the court of civil appeals to be practically in accord with the views expressed in this opinion, but, in the concluding portion of the opinion of the court of civil appeals, this is said:

"The cause will be remanded to the chancery court of Williamson county to the end that the net fund arising from the sale of the land be distributed so as to give to the heirs and representatives of Reese Hamer, deceased, each 1/16 thereof, and the heirs and representatives of Lee Hamer, deceased, 1/4 of the net proceeds of the sale of said land, and the costs of this appeal will be paid out of the proceeds of the sale of said land now

Barnes v. Redmond.

in the hands of the chancery court of Williamson
county."

Counsel for petitioner does not seem to understand
the above quotation from the court of civil appeals as
we do, and, therefore, to the end that all uncertainty
may be avoided and the chancellor fully advised, we
grant the writ of *certiorari* and hold that a correct dis-
tribution of that 1/2 under consideration of the net fund
arising from the sale of the land of the intestate which
remains after payment of all costs, attorneys' fees, etc.,
will be to pay to Robert Lee Cook and each of the other
three persons who are either children or grandchildren
of Reese Hamer a sum of money equal in amount to
1/16 part of the entire net fund, and to each of the
eight persons who are children of Lee Hamer a sum of
money equal in amount to 1/32 part of the entire net
fund.

And a copy of this opinion in lieu of that of the court
of civil appeals will be made a part of the *procedendo*
upon the remand of this cause, and the same will be
remanded to the chancery court of Williamson county,
for proceedings there in accord with this opinion.