JOHN H. CHAMBERS *v.* M. S. PRESTON *et al.*[*]

**1. CONVERSION. Testamentary disposition.**

A will revising the use of land as a loan to the testator's wife to be sold by the executors on her death or on the son's attaining majority, and the proceeds thereof to be distributed among the children, operated to convert the realty into personalty. (*Post*, *pp.* 324-327.)

Cases cited and approved: Wayne v. Fouts, 108 Tenn., 145; Wheless v. Wheless, 92 Tenn., 295; Bedford v. Bedford, 110 Tenn., 204; Bennett v. Gallaher, 115 Tenn., 568; Stephenson v. Yandle, 4 Tenn., 109; McCormick v. Cantrell, 15 Tenn., 615; Campbell v. Campbell, 40 Tenn., 325; Reynolds v. Brandon, 50 Tenn., 593; Green v. Davidson, 63 Tenn., 488.

**2. CONVERSION. Powers of beneficial owner. Sufficiency of acts.**

The beneficial owner of real estate which has been equitably converted into personalty has the power by word or act to reconvert it into realty, but his words or acts to have such effect must be unequivocal, and clearly indicate the purpose to countermand the trust. (*Post*, *pp.* 327-331.)

Cases cited and approved: Baker v. Copenbarger, 15 Ill., 103; Bank v. Rice, 143 Cal., 265; Ebey v. Adams, 135 Ill., 80.

Cases cited and distinguished: Wayne v. Fouts, 108 Tenn., 145; Craig v. Leslie, 3 Wheat., 578.

**3. CONVERSION. Powers of beneficial owner. Sufficiency of acts.**

There can be no reconversion except by unequivocal act or declaration of the owner of the entire beneficial interest, and persons under disability are incapable of making such election. (*Post*, *p.* 331.)

**4. CONVERSION. Powers of beneficial owner. Sufficiency of acts.**

Where testator by will converted realty to personalty, and one

---

[*]On the question of conversion by directing sale after devising land see note in 39 L. R. A. (N. S.), 817.

Chambers v. Preston.

heir mortgaged his interest, which was also levied on by certain creditors, and court preceedings were had, and his interest was sold and bid in by the other legatees, and partition was had, there was no reconversion of the personalty into realty, especially where certain remaindermen in interest were not made parties to the partition suit.   (*Post, pp.* 331-333.)

Cases cited and approved:  Swann v. Garrett, 71 Ga., 556;  Robinson v. Robinson; 19 Beav., 494.

5. **JUDGMENT.**   Partners.   Virtual representation.

In a partition suit, where actual appearance of minor children in interest of certain legatees could have been enforced, their interest could not be bound by the judgment on the theory of virtual representation.  (*Post, pp.* 333-335.)

Cases cited and approved:  Andrews v. Andrews, 54 Tenn., 234;  Freeman v. Freeman, 56 Tenn., 301;  Rutherford v. Rutherford, 116 Tenn., 383;  Ridley v. Halliday, 106 Tenn., 607.

Cases cited and distinguished:  Realty Co. v. Andrews, 128 Tenn., 725.

FROM SUMNER.

Appeal from the chancery court of Sumner County. —J. W. Stout, Judge.

Wm. A. Guild and Baskerville & Collier, for appellant.

Geo. W. Boddoe, B. G. Ellis and Pitts & McConnico, for appellees.

Mr. Justice Green delivered the opinion of the Court:

This bill was filed by the complainant, John H. Chambers, to recover a reversionary interest in lands in Summer county alleged to have accrued to him under the will of his father, John Chambers. The chancellor dismissed his bill, and he has appealed to this court.

John Chambers died in Sumner county in 1863, leaving a large estate which he disposed of by will. Among other property he owned a tract of land of about 390 acres, and it is to recover an interest in this tract of land or portions thereof that the bill in this case is filed.

The first item of the will directs the payment of debts of the testator and other items of the will pertinent to this litigation are as follows:

"2nd. I loan to my wife, Mary H., the tract of land on which I now live, containing about 390 acres; also the use of my stock, household and kitchen furniture and farming utensils until my youngest child, Walter R. Chambers, arrives at the age of twenty-one years; at that time my wife, Mary H., if living, is to select of the stock household and kitchen furniture and farming utensils as may be necessary for her comfort, which I have give to her absolutely. And the balance of said stock, etc., is to be sold on a credit of twelve months; my executor is also to sell said land at that time, or at the death of my wife, on a credit of one

and two years. The proceeds of said sale and other property is to be distributed and hereinafter provided, among my wife and children. I also loan to my wife, Mary H., my negroes, Ned, Dick, Ben, Lucky, Rose and infant child, Matilda, during her natural life, and at her death said slaves and increase are to be disposed of as hereinafter provided. My wife is to furnish my children, Martha, Mary, Sarah and Walter, a saddle horse each, free of charge, as they arrive at age or marry; she is also to complete the education free of charge of my children as have not finished their education at my death.

"3rd. I loan to my daughter, Ann C. Dickerson, my slaves, Lorene and child Lizzie, and a boy, William. To my daughter, Rebecca Shelby, I have given a negro girl, Mittie, four mules, one mare and seven hundred and twenty-five acres of land in Texas and some other property. I loan to my daughter, Martha A., my negroes, Marcia and child, Andrew, a boy Ned. I loan to my daughter Mary J., my slaves, George, Kitty and Alice. I loan to my daughter Sarah, my slaves, Wade, Mary Ann and Henry. I also loan to each of my said daughters an interest with my sons and wife in the proceeds of the land and other property mentioned in clause 2nd and a like interest in all other property I may die possessed of and during their natural lives, to be for the sole and separate use of each of them, free from the contracts and liabilities of their respective husbands, and at the death of my said daughters, thus loaned to them I give and be-

queath to their respective children and their heirs, the issue of any child to represent such child. Should any one or more of my daughters die without issue, or the children of such, then the property herein given to such daughters I give to their remaining brothers and sisters.

"4th. I give to my son, John Chambers, my slaves, Polly and Eliza, and to my Son Walter R. Chambers, my slaves, Rubin, Adelina and Iona. I also give to my sons an equal interest each in land and other property mentioned in clause 2nd. And also an equal interest in all other property I may die possessed of, to them and their heirs.

"5th. Should my wife be living at the time my son Walter R. arrives at age, then I give and bequeath to her an equal interest with my sons and daughters in the proceeds of my land ordered to be sold, to be hers absolutely. Should she die before that time, then the land is to be sold and divided as herein provided."

The testator left surviving him his widow, Mrs. Mary Chambers, and seven children, as follows: John H. Chambers, Walter Chambers, Sally Chambers, who afterwards married Overton, Martha Chambers, who afterwards married Abbott, Ann Chambers, who became Abbott's second wife on the death of her sister, Martha, Rebecca Chambers, who married Shelby, and Mary Chambers.

The complainant has outlived all of his brothers and sisters. Neither Mary nor Ann left children or the issue of children. Complainant is a very old man.

being eighty-six years of age at the time his deposition was taken herein. Shortly after the war he left Sumner county, and has resided since in Texas, Oklahoma, and elsewhere. For many years his family heard nothing of him, and supposed he was dead. On the supposition that complainant was dead, this tract of land, after a partition hereafter referred to, has been dealt with and transferred from time to time, and those portions formerly belonging to Mary and Ann, in which complainant now seeks to establish a right, are in the hands of innocent purchasers, who have made extensive improvements thereon. In the conveyances of the land no account was taken of complainant's reversionary interest inasmuch as he was thought to have died without issue.

It is insisted for the defendants that the will of John Chambers, the father, effected a conversion of the said tract of land from realty into personalty, and that complainant's remedy, if any he has, is against the representatives of his sisters Ann and Mary. These sisters made conveyances, as before stated, in disregard of complainant's reversionary interest. It is conceded that complainant has no right to recover the land if it was indeed converted into personalty by the will of his father, and disbursed by the two sisters, unless certain acts of the parties amounted to a reconversion.

We think the will of John Chambers did not accomplish a conversion of the tract of land into personalty.

By the second clause of said will heretofore quoted, the said tract, together with other property, was loaned to testator's wife "until my youngest child, Walter R. Chambers, arrives at the age of twenty-one years," and at that time the executor was directed to sell said land, or at the death of testator's wife, on a credit of one and two years. Testator then directed that the "proceeds of said sale and other property is to be distributed as hereinafter provided among my wife and children."

In the third section of the will this language appears:

"I also loan to each of my said daughters an interest with my sons and wife in the proceeds of the land and other property mentioned in clause 2nd, and a like interest in all property I may die possessed of during their natural life to be for the sole and separate use of each of them," etc.

In the fifth clause of the will it was provided that if the widow should be living at the time Walter R. Chambers arrived at age, then she was to be given an equal interest with the sons and daughters in the proceeds of the land ordered to be sold to be hers absolutely. This clause then contained the following:

"Should she die before that time the land is to be sold and divided as herein provided."

We think that the foregoing was an explicit, imperative, and an unequivocal direction to the executor of testator to sell the land and to divide the proceeds as indicated by the will. The sale was to be made at all events when Walter R. Chambers arrived at the

age of twenty-one years, or if the widow died sooner the sale was to be made and the proceeds divided upon her death.

There seems to be no doubt of the testator's intention, and the language used by him was sufficient to accomplish an equitable conversion of the tract of land. *Wayne* v. *Fouts,* 108 Tenn., 145, 65 S. W., 471; *Wheless* v. *Wheless,* 92 Tenn., 295, 21 S. W., 595; *Bedford* v. *Bedford,* 110 Tenn., 204, 75 S. W., 1017; *Bennett* v. *Gallaher,* 115 Tenn., 568, 92 S. W., 66; *Stephenson.* v. *Yandle,* 3 Hayw., 109; *McCormick* v. *Cantrell,* 7 Yerg., 615; *Campbell* v. *Campbell,* 3 Head, 325; *Reynolds* v. *Brandon,* 3 Heisk, 593.

There was no contingency as to the sale of this land. It was directed to be sold at a definite future time, namely, when the youngest son reached the age of twenty-one years, or earlier, upon the death of the widow, if she died prior to the son's majority. The rule is established in Tennessee that where land is directed to be sold at a definite future time it is to be regarded as converted into personalty as of the time of the testator's death. *Green* v. *Davidson,* 4 Baxt., 488; *Bennett* v. *Gallaher,* 115 Tenn., 568, 92 S. W., 66.

The great weight of authority is to this effect. Note, 17 Ann. Cas., 643, and note, Ann. Cas., 1915D, 434.

It is contended, however, for the complainant that, although the will may have brought about a conversion

of testator's real estate, a reconversion was thereafter effected by certain proceedings we now detail.

We first observe that the beneficial owner of real estate, equitably converted into personalty, has the power by his words and acts to reconvert it into realty and stamp it with the character of realty at any time before an actual sale of the land. To have such an effect, however, the words and acts of the beneficial owner must be unequivocal and clearly indicate his purpose to countermand the trust. *Wayne* v. *Fouts,* 108 Tenn., 145, 65 S. W., 471.

The complainant gave a mortgage on his interest in the aforesaid real estate, and this interest likewise was levied on by certain of his creditors. Court proceedings were had, and the said interest of the complainant was sold and bid in by the other legatees of the testator. Thereafter about 1859, in a cause pending in the chancery court of Sumner county, a petition was filed by A. W. Overton and wife, Sally (Chambers) Overton, John Shelby and wife, Rebecca (Chambers) Shelby, Ann (Chambers) Abbott, Mary H. Chambers, Walter Chambers, and Mrs. Mary Chambers, against Reginald Abbott. The complainants were the widow and all of the children of the testator except John H. Chambers and Mrs. Martha Abbott. Mrs. Martha Abbott had died leaving a son, Reginald Abbott, who was made a defendant to the said petition as aforesaid.

In this petition it was recited that the petitioners had acquired the interest of John H. Chambers in the

tract of land left by their father; that the executor had endeavored to sell the land, but had not been able to get a suitable offer; reference was made to the will of John Chambers, and it was asked that the petitioners be permitted to partition in kind the tract of land among them. It appears to have been assumed in this petition that the parties before the court represented all the beneficial interests in the land, and a reference was asked to determine whether such partition in kind would be to the advantage of Reginald Abbott, the minor defendant son of Mrs. Martha Abbott, deceased.

A reference was ordered, and the master reported that such partition in kind would be to the advantage of the minor, and this report was confirmed, partition made, and by appropriate decree the various parties before the court were assigned portions of the tract of land in severalty.

It is urged by the complainant that these proceedings had the effect of reconverting the converted land into real estate.

It is said in the case of *Wayne* v. *Fouts,* supra, that the doctrine of reconversion is not so familiar as the doctrine of equitable conversion. Still the principles of the former doctrine are well established. In *Wayne* v. *Fouts* this court said:

"Of course, the burden of establishing a countermand of the trust, a reconversion of the estate, is upon those who assert it. They must show the election claimed, by proof of some unequivocal act or

declaration of the beneficiaries, evincing an intention on their part to extinguish the trust and terminate the equitable character impressed upon the property in the first instance of the instrument conferring the benefit.''

In 2 Jarman on Wills, 191 (quoted in *Wayne v. Fouts*), it is said:

.''That in order to amount to an election to take property in its actual, as contradistinguished from its eventual, or destined, state, the act must be such as to absolutely determine and extinguish the converting trust, and hence it would seem to follow that where two or more persons are interested in the property, it is not in the power of any one coproprietor to change its character, in regard even to his own share; for, as the act of the whole would be requisite to put to the trust, nothing less will suffice to impress upon the property a transmissible quality, foreign to that which it had received from the testator.''

The supreme court of the United States used this language:

''Thus, where the whole beneficial interest in the money in the one case, or in the land in the other, belongs to the person for whose use it is given, a court of equity will not compel the trustee to execute the trust against the wishes of the *cestui que trust*, but will permit him to take the money or the land, if he elect to do so before the conversion has actually been made; and this election he may make, as well by acts or declarations, clearly indicating a determina-

tion to that effect, as by application to a court of equity. It is this election, and not the mere right to make it, which changes the character of the estate so as to make it real or personal, at the will of the party entitled to the beneficial interest. If this election be not made in time to stamp the property with a character different from that which the will or other instrument gives it, the latter accompanies it, with all its legal consequences, into the hands of those entitled to it in that character. So that in the case of the death of the *cestui que trust,* without having determined his election, the property will pass to his heirs or personal representatives, in the same manner as it would have done had the trust been executed, and the conversion actually made in his lifetime." *Craig* v. *Leslie,* 3 Wheat., 578, 579, 4 L. Ed., 460.

The following appears in Ruling Case Law:

"Moreover, if any of the beneficiaries are incapable of making an election—that is, if they are infants, or lunatics, or incompetent, or otherwise disqualified from making contracts with reference to their property—there can be no reconversion of the estate.

. . . Only those who are not incapacitated *sui juris,* for dealing with their own property effectively, may elect to have a reconversion; and where the interest of a person properly qualified so to elect is absolute and wholly vested in himself, there is no doubt of his right so to elect, no matter whether the conversion intended was that of land into money or money into land." 6 R. C. L., 1091.

To like effect see *Baker* v. *Copenbarger,* 15 Ill., 103, 58 Am. Dec., 600; *Bank* v. *Rice,* 143 Cal., 265, 76 Pac., 1020, 101 Am. St. Rep., 118; *Ebey* v. *Adams,* 135 Ill., 80, 25 N. E., 1013, 10 L. R. A., 162; 9 Cyc., 85 *et seq.*

It would seem from these authorities that there can be no reconversion except by unequivocal act or declaration of the owners of the entire beneficial interest, and that persons under disability are incapable of making such an election. This indeed is conceded by counsel for complainant, but they insist that the court, in the partition suit, after hearing proof, made an election for the minor defendant to reconvert.

It is said that these proceedings so far as the adult parties were concerned, unmistakably indicated an election on their part to take the land in its original form; that the action of the court upon the reference accomplished a reconversion as to the minor's interest; that although complainant was not a party, he had theretofore by a mortgage of his interest in the tract of land elected to take it as real estate and thereby reconverted his interest, or if his interest was not in this way reconverted, such interest had passed to the parties to this suit, and was reconverted along with their original interest by the proceedings just mentioned.

There are two cases in which a reconversion was ordered by the court for an infant when it appeared to the advantage of the latter, namely, *Swann* v. *Garrett,* 71 Ga., 566, and *Robinson* v. *Robinson,* 19 Beav., 494.

In the latter case there was no discussion of the question. In the Georgia case there was a vigorous dissent.

If it be true that a court of equity in Tennessee has the power to make an election for an infant in such cases and to decree for him a reconversion of converted realty, nevertheless we think the proceedings relied on by the complainant failed to reach the result ascribed to them for several reasons.

In the first place, as said of proceedings discussed in *Wayne* v. *Fouts,* supra, the question of reconversion was not presented in the pleadings nor adjudged in the decree. While the petition referred to the will of John Chambers, yet the matter was presented rather as if the land itself had been devised to the parties interested, and the particular attention of the court was not called to the conversion directed by the testator. The decree certainly did not directly adjudge the propriety of a countermand of the testamentary trust, nor do we think that the effect of the decree was to bring about such a result, inasmuch as the parties before the court did not represent the entire beneficial interest involved, nor did said decree, in any way, protect the contingent remaindermen.

The daughters of the testator took only a life estate in the property bequeathed to them with remainder "to their respective children and their heirs, the issue of any child to represent such child." It was further provided in the will that should any of the daughters die without issue or children of such, then

the property given to them was to go to their remaining brothers and sisters.

It appears almost certainly from the deposition of John H. Chambers and other wise in the record that at the time of the partition suit Mrs. Rebecca Chambers Shelby had children, and likewise Mrs. Sally Chambers Overton had children. These two daughters were merely life tenants. Their children, who were first takers in remainder, were not made parties. The case progressed as if these daughters were absolute owners instead of life tenants. The rights of the Shelby and Overton children were not noticed.

It is contended, however, by complainant that the doctrine of virtual representation should here find application and all interests treated as having been before the court.

This doctrine may be invoked to bind the interests of parties uncertain, indeterminable, or not in being at the time of suit. Respecting the rights of the Shelby and Overton children, they should have been brought in. They were known and available. There is no room for virtual representation when actual appearance can be enforced. Likewise, under our rule, these children were necessary parties to a suit to pass the estate of the contingent remaindermen.

We had occasion to discuss virtual representation in the late case of *Realty Co.* v. *Andrews,* 128 Tenn., 725, 164 S. W., 1175, and there said:

"It is well settled that contingent limitations and executory devises to persons not in being, or uncertain

and indeterminable at the time of the proceedings, may be bound by a decree against the person then claiming the vested estate. In suits to enforce a trust, or with reference to trust property, so limited in remainder, if the holder of the legal title, the life tenant, and the persons in being in whom the remainder would become a vested estate if the life estate then fell in—if all these are parties, a valid decree may be pronounced.''

The foregoing rule was deduced from *Andrews* v. *Andrews*, 7 Heisk. (54 Tenn.), 234; *Freeman* v. *Freeman*, 9 Heisk. (56 Tenn.), 301; *Rutherford* v. *Rutherford*, 116 Tenn., 383, 92 S. W., 1112, 115 Am. St. Rep., 799.

The partition suit relied on by complainant fell short of the requirements laid down above. There were persons in being in whom the remainder would have become a vested estate if the life estate had then fallen in, to wit, the children of Mrs. Shelby and of Mrs. Overton. ·

In the other particular indicated, the partition suit failed to comply with the rules as to the conversion of an estate with contingent limitations in favor of indeterminable parties. In *Ridley* v. *Halliday*, 106 Tenn., 607, 619, 61 S. W., 1025, 53 L. R. A. 477, 82 Am. St. Rep., 902, it is said to be essential, in every such case, that the interest of the contingent remainderman in the proceeds of the converted property be preserved by the decree directing the conversion. A decree which fails so to preserve the in-

terest of virtually represented contingent remainder-men is not binding on them. As heretofore pointed out, the petition and the decree relied on by complainant seemed to assume that all the parties to the suit had absolute interests in the property dealt with, and ignored the rights of the contingent remaindermen altogether. These proceedings therefore did not, and could not, have amounted to a transmutation of the contingent interest in this estate, and thereby no reconversion was accomplished.

It results that the chancellor correctly dismissed the complainant's bill, and his decree will be affirmed.