MARY W. GILBREATH et al., Respondents, v. JOHN COSGROVE, et al., Appellants.

Kansas City Court of Appeals, May 1, 1916.

1. **EQUITABLE CONVERSION: Realty: Personalty.** Direction by the testator to the executor to sell real estate converts it into money, under the doctrine of equitable conversion, whereby the original character of the property is converted into that class in which it is directed to be placed.

2. ————: **Election: Beneficiaries.** Before an equitable conversion of one class of property into another actually takes place, the beneficiaries may elect to take the property in its original class, or character and thus defeat a conversion.

3. ————: ————: **All or Less Number of Beneficiaries.** An election to take, in its original character, property directed by a testator to be converted into another class, must be by *all* of the beneficiaries, *unless* the election of a less number could not possibly injure those not joining in the election.

4. ————: ————: **Heirs: Widow: Tender.** The testator directed the executor to sell a tract of land for cash, and out of the proceeds to pay his widow $8000, and divide the balance equally between his two adult children. Before the sale was made the two children (the widow not joining) elected to take the land itself and tendered the $8000 to the widow. It was *held* that it was a valid election.

5. ————: ————: **Executor's Commission.** Where a testator directed the executor in his will to sell a tract of land for cash and out of the proceeds to pay his widow $8000 and to divide the balance between his two children and the latter offered to

pay the widow the sum due her and elected to take the land before it was sold; it was *held* that the executor was entitled to his commission on the whole value of the land; such value to be ascertained by the court.

Appeal from Cooper Circuit Court.—*Hon. Jack G. Slate,* Judge.

REVERSED AND REMANDED (with directions).

*W. M. Williams* and *John Cosgrove* for appellants.

*W. F. Johnson* for respondents.

ELLISON, P. J.—John A. Waller died possessed of real and personal property which he disposed of by will. He named the defendant as executor of this will and he left a widow and two adult children. By provision of the will, he devised to the two children 162 acres of land known as his "Home Farm." He had one other tract of land, consisting of 196 acres, which he disposed of by "Item Third" of his will in the following language:

"I direct my executor hereinafter named to sell, for cash the following described real estate: (Describing it). And I further direct my executor to pay my wife out of the proceeds arising from the sale of said one hundred ninety six and 78/100 (196.78) acres of land eight thousand (8000) dollars, and to divide the remainder of said amount, after paying my wife said eight thousand (8000) dollars between my daughters, Mary W. Gilbreath and Laura Warren, equally, share and share alike, that is one-half to each."

All the balance of his estate was to be divided equally between his wife and two children; and the provisions thus made for his wife were declared to be in lieu of dower, homestead and marital rights in his estate.

The testator died in January, 1915, and in July following the two children brought the present action against the executor and the widow and recovered judgment in the circuit court.

The petition alleged and the proof showed the will contained the provisions just stated. It was then alleged, and it was proven, that plaintiffs tendered the $8000 which defendant, as executor, was directed to pay her out of the proceeds of the sale of the 196 acres of land. It was also alleged: "That they elect to take the aforesaid real estate in lieu of the proceeds of the sale thereof." It was then alleged that defendant Cosgrove has threatened to sell and is attempting to sell the land, notwithstanding plaintiffs' election to take it in lieu of the proceeds of a sale. The prayer of the petition was that the widow "be brought into court to receive said $8000 in discharge of the charge or lien in her favor on said real estate, and that the executor Cosgrove, the trustee of the power of sale be forever enjoined from selling said real estate," and for such further relief etc.

The direction to the executor to sell the real estate converted it into money, under the rule in equity which considers that done that is directed to be done. This is called an equitable conversion from the original character of the property into that class in which it is directed to be placed.

Following along with this rule is another, that, before the actual conversion by a sale, the beneficiaries may reconvert the property back to its original character by electing to take it in that character, instead of the substituted character. [Griffith v. Witten, 252 Mo. 627; Nall v. Nall, 243 Mo. 247.] The doctrine of conversion and reconversion was argued by counsel at length; but as that doctrine is so clearly stated and fully discussed by our Supreme Court in those cases, we need do no more than refer to what is there said.

An important point arising here, is, has there been a proper election in the circumstances of this case? The question was discussed in Willams v. Lobban, 206 Mo. 399, 414-419, and by this court in Compton v. McMahan, 19 Mo. App. 494, 503, but not decided. The weight of authority is that all of the beneficiaries must elect; less than all not having the power to reconvert the property. [McDonald v. O'Hara, 144 N. Y. 566; Bank of Ukiah v. Rice, 143 Cal. 265, 273; Baker v. Copenbarger, 15 Ill. 103; Eby v. Adams, 135 Ill. 80, 86; Harcum v. Hudnall, 14 Gratt. 369, 376; High v. Worley, 33 Ala. 196, 199; Willing v. Peters, 7 Barr 287; Wayne v. Fouts, 108 Tenn. 145, 156; Craig v. Leslie, 3 Wheat. 563, 579; Holloway v. Radcliffe, 23 Beavan 163, 172; Fletcher v. Ashburner, 1 Brown Ch. 497; 1 Beach Mod. Eq. Jur., sec. 537.]

But this rule would not apply to instances where the election of less than all could not possibly injure those not joining in the election. [3 Pomeroy Eq. Jur., sec. 1176; Bank of Ukiah v. Rice, 143 Cal. l. c. 273.]

Applying this rule and the exception just stated, to the facts before us, we believe a proper election to reconvert the property has been made, notwithstanding the widow has refused to join. Accepting the provisions of the will as she has, her sole interest in the land is the specific sum of $8000, and that amount is offered and must be paid to her, or into court for her, under the allegations in the petition, before the court should grant plaintiffs' prayer. There can be no possible reason in allowing to her a power to veto the effort to reconvert the property when her entire interest in it is satisfied.

But it would be manifest injustice to permit the execution of the decree of the trial court without providing therein for the payment of the defendant's commission. The property directed by the testator to be sold, assumes the character into which it is

directed to be converted immediately upon the testator's death (Griffith v. Witten, 252 Mo. 627, 646), and it devolves upon the administrator or executor, or upon the heir, as would any other property of the kind into which it is thus converted. That is, if money is directed to be converted into land, such money will not pass to the executor or administrator, but will assume its converted character of land and devolve upon the heir; and if the property be land directed to be converted into money, it will be regarded as money and "goes to his personal representative" as other personal assets of the estate. [1 Pomeroy Eq. Jur., sec. 371.] It "is regarded and treated as money. . . . It is therefore always personal assets in the hands of executors and administrators for which they are accountable." [3 Pomeroy Eq. Jur., sec. 1164.] The conversion "will take place from the death of the testator, when *eo instanti* the shares pass as personalty." [1 Beach Modern Eq. Jur., secs. 529, 527, 521, 530.] In Kane v. Gott, 24 Wend. 641, 659, Judge COWEN, in speaking of this question, said (italics his) that: "It is of the nature of such a trust that immediately on the testator's death, and for all purposes of testamentary disposition, the *real* becomes *personal* property in every sense; and must be treated precisely as if it had been so before." And such is the effect of all the cases. [Hutchings v. Davis, 68 Ohio St. 160, 173, 174; Perkins v. Coughlan, 148 Mass. 30; Henderson v. Henderson, 133 Pa. St. 399; Jones v. Caldwell, 97 Pa. 42, 45; Marcum v. Hudnall, 14 Gratt. 369, 374; Miller v. Commonwealth, 111 Pa. St. 321; Corrington, Ex Parte, 124 Ill. 363, 367; Fletcher v. Ashburner, 1 Brown Chan. Cas. 497; Holloway v. Radcliffe, 23 Beav. 163, 172.]

It seems logically to follow that as the property passes to the executor or administrator for disposition by him, either by sale under the will, or by turning it over to the heirs upon their election, he is entitled to

his commission the same as if he had made a sale and turned the money over to them.

In Huddleson v. Kempner, 87 Texas, 372, an administrator sold land to pay creditor's debt and the latter bought it in at less than the debt and credited his bid on the debt. The administrator, though not handling the money, was held entitled to his commission.

In Martin v. Andrews, 111 N. Y. Supp. 40, an executor turned over residuary estate in stocks to devisees, and it was held he was entitled to his commission.

In McAlpine v. Potter, 126 N. Y. 285, 291, it is said that if securities have been accepted by legatees as cash, without being converted by the executor, he is nevertheless entitled to his commission.

In Re Saunders Estate, 137 N. Y. Supp. 438, 447, the testator directed the executors to convert real estate into money and it was held that they were entitled to a commission on the value of the real estate to be converted.

A case in New Jersey we think is like this in all essential particulars. The testator provided in his will for the conversion of his real estate into personal and to pay certain legacies, the balance to a residuary legatee. The executors paid the general legacies and satisfied the specific legacies. On a bill to restrain them from converting the real estate on the ground that there was no necessity for it, and to compel them to convey it to the residuary legatee, it was held, that they were entitled to their commission. [Stein v. Huesmann, 38 N. J. Eq. 405.] It is true of that case that the testator authorized the executors to retain five per cent commission on the sale of the land, but that is no more than our statute does in this case. The court said that: "Should they (the executors) execute the power of sale under the will, there could be no question that they would be entitled to the percentage. The complainant, for his own advantage, seeks to restrain them from

converting the property and to compel them to convey it to him, and they are willing to do so. Under the circumstances, they are entitled to the percentage on the appraised value of the property.''

The fact that the real estate in question is not valued in money, will not deprive the court of a basis for compensation. If not agreed upon, its value may be appropriately ascertained by the court. Such situations have frequently occurred. Thus in May v. Green, 75 Ala. 162 depreciated Confederate States money was involved and commission allowed on its value. In Estate of Stratton, 46 Md. 551, it was held that the real value of bonds should be ascertained and that it was error to allow commission on their face value.

We will therefore reverse the judgment and remand the cause with directions that, upon plaintiffs' paying to the widow $8000, and interest since the commencement of this suit, and upon payment to the defendant of five per cent commission on the whole value of the land, such value to be ascertained by the court, if not agreed upon, then to enter judgment perpetually restraining defendant from selling the land, or further interfering therewith. The other Judges concur.