(No. 11532.—Reversed and remanded.)
HENRY A. GROVE *et al.* Appellees, *vs.* BELLE WILLARD
*et al.* Appellants.

*Opinion filed October 23, 1917.*

1. WILLS—*when provision in will amounts to equitable conversion of real estate.* Where a testator in his will gives a positive direction to sell his real estate and to divide the proceeds thereof among legatees therein named, such direction amounts to a conversion of the real estate into personal property and the legatees take the same as personal property.

2. SAME—*when absence of express direction will not render exercise of power of sale in a will discretionary.* Where the power granted to an executrix to convert land into money is full and complete and not referred to her discretion, the absence of an express command or direction will not render the exercise of such power discretionary when to so hold will defeat the testator's intention as manifested from the whole will.

3. SAME—*when direction to convert is apparent from the entire will, duty to sell is imperative and conversion is immediate.* Where the direction to convert the testator's real property into personalty is apparent from the whole will, whether expressed or implied, the duty and obligation to convert are imperative, and the conversion will be deemed to be immediate although the donee of the power of sale is vested for the benefit of the estate, with a discretion as to the time and manner of sale.

4. SAME—*laches cannot operate to defeat the trust created by power of sale given in a will for purpose of distribution.* Where a testator directs his executrix to sell his real property and distribute the proceeds according to provisions in the will the executrix will take the title in fee, by implication, in trust for the purpose of carrying out the intent of the testator; and such power of sale is not destroyed by the failure of the executrix to exercise it before her death, nor can the doctrine of *laches* be applied to defeat the trust, as the legal title of the trustee passes to her legal heirs subject to the trust.

5. SAME—*when an increase in value of legacies will not render subsequent exercise of power of sale inequitable.* The fact that certain legacies to be paid out of the proceeds of the sale of real estate have increased in value with the land because of the failure of the executrix to exercise the power of sale will not render a subsequent exercise of the power after thirty years inequitable because the other legacies are for stipulated sums, where the legatees could have enforced a sale and payment of the legacies at any time.

APPEAL from the Circuit Court of Marshall county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

W. R. HUNTER, and EVANS & EVANS, for appellants.

BARNES, MAGOON & BLACK, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Melchi Grove, of Marshall county, executed his will on April 13, 1881, and died May 7, 1881, seized in fee simple of the north half of the southwest quarter and the north half of the southeast quarter of section 19, town 12, north, range 8, east of the fourth principal meridian, 152.21 acres. He left surviving him his widow, Amelia Grove, and Henry A. Grove, John E. Grove, Sheridan Grove, Clara M. Lapsly, Belle Grove (now Belle Willard) and Shirley Ann Grove, his only children and heirs-at-law. His will was probated in the probate court of Marshall county June 3, 1881, and provided as follows:

"*First*—I will, order and direct that all my personal property and real estate shall be held and controlled by my beloved wife, Amelia Grove, and that she shall have full power, after my decease, to sell or dispose of any or all of it as she shall think for the best interest of herself and family, and upon the sale of my personal property and my real estate my said wife, Amelia Grove, shall divide the proceeds of such sale in the following manner, to-wit: I will and bequeath to my daughter Clara M. Lapsly $1500; I will and bequeath to my daughter Belle Grove $1500, one good bedstead and bedding; I will and bequeath to my daughter Shirley Ann Grove $1500, one good bedstead and bedding; I will and bequeath to my son Sheridan Grove $1500, one good bedstead and bedding; I will and bequeath to my two eldest sons, John E. Grove and Henry A. Grove, $15 each, for I consider that I have already paid John and

Henry more money than the rest of my heirs will get out of my estate.

"*Second*—When the several bequests are paid as provided for, then I order, will and direct that any surplus out of my estate shall be divided equally by my executor between my daughters, Clara M. Lapsly, Belle Grove, Shirley Ann Grove, and my son Sheridan Grove.

"*And lastly*—I make, constitute and appoint my wife, Amelia Grove, to be my sole executor of this my last will and testament, and that she shall not be required to give bonds, and hereby revoking all former wills by me made."

The said real estate was subject to a mortgage for $5000, dated February 28, 1879, securing five notes for $1000 each, due two, three, four, five and six years from date of the mortgage, with ten per cent interest from date. The widow never qualified as executrix under said will and no letters testamentary ever issued to anyone. The testator left only sufficient personal property to pay his debts, other than said mortgage debt. The widow, while in possession of the land, paid the unpaid portion of the mortgage debt, to-wit, $3000, and interest to June 23, 1903, out of her personal and individual funds and property derived from accumulations from the farm, and obtained from the trustees in the trust deed a release deed releasing the lien of the said trust deed, which she caused to be recorded. She executed a will March 28, 1910, reciting and providing as follows:

"The property that I have accumulated since my husband's decease by industry and economy, having a just and legal right to dispose of it as I think for the best interest of my family, I give and bequeath to my sons John Grove and Henry Grove $1000 each.

"And lastly, I give and bequeath all the rest, residue and remainder of my personal estate, goods and chattels, of what nature or kind soever, to my children, to be divided equally between them, share and share alike, except my two grand-

daughters one-half share each, which would have been their mother's portion if she had been living."

The widow died testate November 3, 1914, leaving her surviving Henry A. Grove and Sheridan Grove, her sons, Belle Willard, her daughter, and the children of John E. Grove, deceased, and of Clara M. Lapsly, deceased, her grandchildren, as her only heirs-at-law. Shirley Ann Grove died intestate July 4, 1887, leaving no husband but leaving her mother, Amelia Grove, and her brothers and sisters aforesaid, as her only heirs-at-law. Clara M. Lapsly died intestate in 1888, leaving surviving her her husband, David Lapsly, and Valena Gasfield and Zella Mashino, her daughters and only heirs. John E. Grove died intestate in 1911, leaving surviving him Rebecca Grove, his widow, and Lorena Barrus, Althea Grove, Madison Grove, Bertha Jennings and Gertrude Brundage, his children and only heirs. Sheridan Grove and wife executed a trust deed to John I. Thompson on February 9, 1909, securing two notes of $500 each, which are unpaid, said trust deed covering or purporting to cover his undivided interest in said real estate. Stephen Willard was in possession of the said real estate as a tenant under a verbal lease from Amelia Grove expiring March 1, 1915. Amelia Grove retained possession of the land from the death of her husband up to her death without ever having sold the land or any part thereof or having paid any of the legacies mentioned in the will of Melchi Grove. Her said will was duly probated in the county court of Marshall county, and Robert Turnbull, executor named in the will, is still acting as executor thereof. There was no administration, or necessity therefor, of the estates of John E. Grove and Shirley Ann Grove, there being no unpaid debts or claims against their estates.

Appellees, Henry A. Grove, Rebecca Grove, Madison Grove, Lorena Barrus, Althea Grove and Bertha Jennings, filed their bill for partition in the circuit court of said county, alleging the foregoing facts and making all the rest

of the heirs of Melchi Grove and Amelia Grove, her exec-
utor, Robert Turnbull, and David Lapsly, Stephen Willard
and John I. Thompson, trustee, parties defendant. The bill
charges that by reason of the fact that Amelia Grove, "the
life tenant," failed to perform the "discretionary trust" and
power given her under the will of Melchi Grove and to ex-
ercise the discretion given her to sell said real estate, and
because of the insufficiency of the personal estate to pay the
said legacies, and the said legacies not having been made a
lien or charge on said real estate or any part thereof, the
said legacies have lapsed or failed, and that the fee title,
both legal and equitable, in said real estate vested by the
laws of descent in the heirs-at-law of Melchi Grove, de-
ceased; that the said heirs-at-law of Shirley Ann Grove,
Clara M. Lapsly and John E. Grove, deceased, inherited
their respective shares as real estate, and that the undivided
share of Sheridan Grove is subject to the trust deed made
to John I. Thompson, trustee, and that the undivided two-
sevenths share of Shirley Ann Grove, deceased, passed by
inheritance to Amelia Grove and her heirs as real estate,
the same not being disposed of by the will of Amelia Grove.
The respective shares of the various parties are correctly set
forth in the bill if the theory of the bill is correct, includ-
ing the dower interest of Rebecca Grove and David Lapsly.

Sheridan Grove, Belle Willard and Stephen Willard
filed a joint and several answer to said bill, admitting all
the foregoing facts except as to the existence and lien of
said mortgage on the real estate executed by Melchi Grove,
but they admit that it was paid off as alleged in the bill, if
it ever was executed. They insist by their answer that it
was made the duty of Amelia Grove by the will of Melchi
Grove, as trustee, to sell the said premises and with the
proceeds pay the said legacies mentioned in the said will
and to divide the remainder thereof among the residuary
legatees named in the will, and that no part of said real
estate descended to the heirs of Melchi Grove as real estate,

and that a trustee should be appointed by the court to sell the real estate and divide the proceeds as personal property among the said legatees and their heirs.

A general and special demurrer was filed to the bill by David Lapsly, Valena Gasfield and Zella Mashino, alleging specially that the power given to Amelia Grove to sell the real estate is mandatory and not discretionary; that the interests of the parties are not correctly set forth in the bill, and that the fee simple title to the land did not vest in the heirs-at-law of Melchi Grove, deceased.

Sheridan Grove, Belle Willard and Stephen Willard also filed a cross-bill, alleging the same facts set forth in the original bill, and made, in substance, the same claim by their cross-bill as set forth in their said answer. The prayer in their cross-bill is that all the parties to the cross-bill, who are all the parties to the original bill except themselves, be required to answer the bill without oath, and that the court appoint a trustee to make sale of all of said premises and with the proceeds thereof pay the special legacies and divide the remainder thereof among the residuary legatees and the heirs of said special and residuary legatees, treating the real estate as personal property from and after the date of the death of the testator, Melchi Grove, the distributive share of Sheridan Grove to be paid subject to the trust deed executed to John I. Thompson.

The complainants in the original bill filed a joint general and special demurrer to said cross-bill, alleging specially, in substance, that the interests of the parties are not correctly set forth in the cross-bill; that the fee simple title to said land vested in the heirs-at-law of Melchi Grove subject to the exercise of the power of sale by the widow, which was never executed; that all the heirs of Melchi Grove are adults, and that they could by warranty deed convey to a purchaser the fee simple title to said real estate without the intervention of any trustee; and that the said cross-complainants are guilty of *laches* in delaying more

than thirty years in seeking the relief asked in their cross-bill, and that their cross-bill is therefore without equity.

The circuit court sustained the exceptions of the complainants in the original bill to said answer thereto, overruled the demurrer to the original bill and sustained the demurrer to the cross-bill; and said defendants answering the original bill and those demurring to said bill having elected to stand by their answer and by their said demurrer, and the complainants in the cross-bill having elected to stand by their cross-bill, there was a default entered against all the other defendants not pleading or answering the bill, and the court entered a decree in accordance with the prayer of the original bill and dismissed the cross-bill for want of equity. From that decree Belle Willard, David Lapsly and Valena Gasfield have prosecuted their appeal to this court.

The will of Melchi Grove contains no provisions for the payment of debts although there were debts that exceeded, in the aggregate, the value of the personal property. The will made no specific devise or bequest to the widow. The deceased, however, was presumed to know that in case of his death his debts would ultimately have to be paid and that the widow would be entitled to her rights under the statute. It is reasonably clear from the provisions of the will that the testator had concluded that there would be a necessity for the sale of a considerable portion of his real estate to pay the debts of the deceased and the widow's award. It is also very clear from all the provisions of the will that the testator intended that all of his real estate, as well as his personal property, should be sold by the executrix, with the possible exception of her dower and homestead interest, and she was given the option by the will to sell the part thereof covered by her dower and homestead if she thought it was for her best interest. It is positively stated in the will that it is his will, and that he orders and directs, that all of his personal property and real estate shall be held and controlled by his wife, Amelia Grove, and he

gives her full power, after his death, to sell and dispose of it as she shall think for the best interest of herself and family. She is not given an option to sell or not to sell any or all of the real estate and personal property, as argued by appellees, but the option given her is to sell it in the way and manner that she shall think is for the best interest of herself and family. All of the provisions of the will indicate that the property was to be sold by her, and that upon such sale the proceeds should be used to pay the legacies mentioned in the will after the payment of the debts and after the widow had secured her rights under the statute. The words in the will, "and upon the sale of my personal property and my real estate my said wife, Amelia Grove, shall divide the proceeds of said sale in the following manner," indicate clearly that a sale is to be made. The directions are not to pay the legacies *if* a sale be made, but the legacies are to be paid *"upon* the sale" of the property, and clearly import that a sale is to be made. The specific legacies in the will are all made in positive language, each one of them being preceded by the words, "I will and bequeath." By the second clause of the will the testator positively orders, wills and directs that any surplus out of the estate shall be divided equally by the executrix among the residuary legatees therein named "when the several bequests are paid as provided." This clause contemplates that there would be a surplus after the sale and payment of the specific legacies, and leaves no doubt upon the question whether or not the sale of the property was entirely optional upon the part of the executrix. There can be no doubt that it was the intention of the testator, as expressed in his will, that the "surplus" referred to in the second clause of the will means the surplus of the proceeds of the sale after the specific legacies have been paid and after all debts have been satisfied and after the widow had secured her rights. It is necessarily implied in the will that the widow had an option to sell or not to sell the part of the real es-

tate covered by her statutory rights, if not clearly expressed. The power conferred upon her was to sell or dispose of "any or all of it as she shall think for the best interest of herself and family,"—*i. e.,* sell all of it, including that covered by her dower and homestead, if she should think that best for herself and the legatees, or that she might have her homestead and dower in the land if she preferred, which right the statute guaranteed to her. The entire will, as a whole, leads to but one reasonable conclusion, and that is, that it was her duty, under the will, to convert the entire real estate into personalty so far as the legatees were concerned. It is contrary to the whole plan and the whole scheme of the will, and to every clause in it, to hold that the testator contemplated or intended that his heirs or legatees should receive anything except money, the proceeds of the sale of all of his property, both real and personal.

The doctrine of equitable conversion is well recognized by many decisions of this court. When a testator in his will makes a positive direction to sell his real estate and to divide the proceeds thereof among legatees therein named, such direction amounts to a conversion of the real estate into personal property and the legatees take the same as personal property. (*Rankin* v. *Rankin,* 36 Ill. 293; *Pasquay* v. *Pasquay,* 235 id. 48; *Maginn* v. *McDevitt,* 269 id. 196.) Where the power granted to an executrix to convert land into money is full and complete and not referred to her discretion, the absence of an express command or direction will not render the exercise of such power discretionary, when to so hold would defeat the testator's intention as manifested from the whole will. (*Greenwood* v. *Greenwood,* 178 Ill. 387.) The primary rule of construction, which governs in determining what character is to be given to property passing under a will, is the intention of the testator, which, if not expressly stated, must be adduced from the whole instrument rather than from the terms or provisions of any particular part thereof, which, regarded

alone, might be inconsistent with the testamentary scheme as a whole.   (6 R. C. L. 1069.)   When the direction to convert is apparent from the whole will, whether expressed or implied, the duty and obligation to convert are imperative.   Where the general scheme of the will requires a conversion, the power of sale, although not in terms and imperative, operates as a conversion; and this will be deemed to be immediate, although the donee of the power is vested, for the benefit of the estate, with a discretion as to the time and manner of sale.   It has even been held that conversion will take place though the language confers a mere discretionary power of sale, where it is not possible to execute certain provisions of the will without a sale of the real and personal property.   6 R. C. L. 1076; 3 Pomeroy's Eq. sec. 1160; *Fahnestock* v. *Fahnestock,* (Pa.) 25 Atl. Rep. 313; *Greenman* v. *McVey,* (Minn.) 38 Ann. Cas. 430; *In re Marr's Estate,* (Pa.) 87 Atl. Rep. 621; 2 Underhill on Wills, secs. 699-701.

There are three plain and positive provisions in this will that lead to the conclusion that the doctrine of equitable conversion must be applied to this case:   (1) The blending of the proceeds of land which is directed to be sold with the personal property of the testator, which is directed by the first clause of the will;   (2) the direction of the testator to apply such proceeds to the payment of specific legacies and the surplus thereof to the residuary legatees; and (3) the direction of the testator to pay only $15 each to the legatees Henry A. and John E. Grove, coupled with the positive statement that the testator had already paid said two legatees more money than the rest of his heirs would get out of his estate.   We cannot read the provisions of this will without deducing the conclusion that it was the intention of the testator that Henry A. and John E. Grove were to have no greater interest in his entire estate than the sum of $15 each specially bequeathed to them, and that all the other heirs of the testator should have the entire re-

mainder of the estate paid to them in money after the payment of the debts and after the widow had had her rights under the statute. The executrix took the title to the real estate in question in fee, in trust for the purpose of carrying out the intent of the testator,—*i. e.,* to sell all of the property, both real and personal, to pay the debts of the deceased, and after deducting the amount going to her under the statute to distribute the remaining proceeds to the legatees as provided in the will, or to sell all of the real estate after having her dower and homestead set off and distribute the proceeds as aforesaid; and such power of sale is not destroyed by the failure of the executrix to exercise the power of sale as directed by the will. (*Fahnestock v. Fahnestock, supra.*) The legal title of the trustee or executrix passed to her legal heirs subject to the trust. *Lawrence* v. *Lawrence,* 181 Ill. 248.

The will did not in express terms devise the legal title of the land to the widow for the purposes of the trust, but she takes such legal title by necessary implication but for the purposes of the trust, only. (6 R. C. L. 1068; *Defrees v. Brydon,* 275 Ill. 530.) The doctrine of *laches* cannot be applied to defeat such a trust, and the result of our conclusion is that there was an equitable conversion of the real estate under the provisions of the will and that it must be passed to the heirs or legatees as personal property, as the conversion must be deemed to have been effected as of the date of the testator's death. (3 Pomeroy's Eq. 1162.) The distributive share of Shirley Ann Grove passed to her heirs as personal property upon her death, two-sevenths of which share her mother took or was entitled to take as personal property, and her share will pass by her will as personal property to her legatees. The distributive shares of Henry A. and John E. Grove and of Clara M. Lapsly passed to their personal representatives as personal property to be distributed by them.

280 — 17

The circumstance that John E. Grove's·heirs and Henry A. Grove have waited for more than thirty years to receive their fifteen-dollar legacies while the other legatees' interests have increased largely in value is referred to as a hardship upon said legatees, and that it is not equitable to decree that they shall receive no more than the sum bequeathed by the will. There are no averments of such increase in the value of the other legacies, and if there were we do not see how it could materially figure in this case. There has been no time since the trust was conferred upon the widow and executrix that they could not have enforced the sale of the property and the payment of the legacies as provided in the will. The fact is, all the legatees have allowed the widow to manage this property as she has seen fit to do. By her energy and economy she has saved much more to the legatees as a whole, perhaps, than would have been realized from the property if sold many years ago. By her will she recognized that the real estate belonged to the legatees, and did not undertake, apparently, to make any claim of right to dispose of the real estate, or the real estate converted to personal property according to·the provisions of the will of her husband. It is evident, however, by the terms of her will, that she undertook to, and perhaps did, correct all the inequality or hardship referred to, by giving John E. and Henry A. Grove $1000 each more than any other of her children and the heirs of her daughter Clara M. Lapsly.

The decree of the circuit court is reversed and the cause is remanded, with directions to sustain the demurrer to the original bill and to overrule the exceptions to the answer and the demurrer to the cross-bill, and for further proceedings in harmony with the views herein expressed.

*Reversed and remanded, with directions.*