(No. 11955—Decree affirmed.)

THE HOOPESTON PUBLIC LIBRARY *et al.* Appellants, *vs.* EDWARD D. EATON *et al.* Appellees.

*Opinion filed April 17, 1918—Rehearing denied June 5, 1918.*

1. WILLS—*when there may be a re-conversion.* There may be a re-conversion of the bequests, in cases of equitable conversion, where all the legatees are *sui juris* and agree and elect to take the land instead of the proceeds of its sale.

2. SAME—*upon what principle the doctrine of equitable conversion is based.* The doctrine of equitable conversion is based on the principle that equity regards things directed or agreed to be done as having been already performed, where nothing has intervened which ought to prevent a performance.

3. SAME—*when a re-conversion takes place in favor of residuary legatees although one specific legatee does not consent thereto.* Where a testator provides that his undisposed of land shall be sold and specific sums be given to certain legatees and that the remainder shall be divided among residuary legatees, and where all the parties interested, except one of the specific legatees, agree to a re-conversion upon the offer of the residuary legatees to pay the specific legacies, such re-conversion will take place where the objecting legatee is tendered in court all that it is entitled to.

APPEAL from the Circuit Court of Vermilion county; the Hon. A. A. PARTLOW, Judge, presiding.

WALTER T. GUNN, JAY BRIGGS, and CHARLES F. DYER, for appellant the Hoopeston Public Library; CHARLES A. ALLEN, and L. T. ALLEN, for appellant Fred H. Ayres; EDWARD J. BRUNDAGE, and FLOYD E. BRITTON, (BUEL H. SNYDER, of counsel,) for appellant the Attorney General.

283 - 29

MONTGOMERY, HART & SMITH, for appellee Beloit College; DAVID FALES, for appellee the Congregational Board of Ministerial Relief; DAVID FALES, and CHARLES TROUP, for appellees the American Board of Foreign Missions, the American Missionary Association, and the Congregational Home Missionary Society.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant the Hoopeston Public Library, of Hoopeston, Illinois, filed its bill in chancery in the circuit court of Vermilion county praying for the appointment of a trustee to sell lands of which Dana Sherrill died seized, for the purpose of carrying out the terms and provisions of the will of said Sherrill, who died testate in Grundy county, Illinois, February 1, 1912. Sherrill left a widow surviving him. He owned a considerable amount of real estate in Grundy, Kendall, Iroquois and Vermilion counties. By his will he gave to his widow, after the payment of debts, all his personal property and also the income from all his real estate. He gave to a brother and two sisters a farm of 237 acres in Kendall county, to be divided among them equally after the death of his wife. The will directed that after the death of testator's wife the remainder of his estate should be sold and $30,000 paid to the trustees of Beloit College, of Beloit, Wisconsin, to be used for the purpose of assisting needy and worthy young men in obtaining an education, $500 to the Hoopeston Public Library and $500 to the endowment fund of the Congregational Board of Ministerial Relief. The remainder of the fund, after paying said bequests, the will directed should be equally divided among the American Board of Commissioners for Foreign Missions, the American Missionary Association and the Congregational Home Missionary Society, all of which the will denominated as missionary corporations of the Congregational church. The widow was named as executrix but failed to qualify, and I. V. Cryder, the husband

of one of the testator's sisters, was appointed administrator with the will annexed by the probate court of Grundy county, and he administered the estate and was discharged by that court. On April 13, 1917, the widow of testator died and seven days later this bill was filed.

The will contained no provision authorizing any person to carry out the terms and provisions of the will by selling the property and distributing the proceeds. The three residuary legatees above named were, among others, made defendants to the bill, and filed a joint answer admitting no person was appointed or authorized by the will to sell the property and carry out the terms of the will. The answer averred that said residuary legatees took a vested interest in the residuary estate, subject to the payment of the special bequests to the trustees of Beloit College, the Hoopeston Public Library and the endowment fund of the Congregational Board of Ministerial Relief. The trustees of Beloit College filed an answer admitting the necessity for the appointment of a trustee to carry out the provisions of the will, to sell the real estate and distribute the proceeds as directed in the will.

Fred H. Ayres, a brother of the widow of testator, who was not made a party to the bill of complaint, asked and was granted leave to file a cross-bill, which he filed. The cross-bill alleged cross-complainant from 1885 to 1905 was residing and engaged in farming in Iroquois county in close proximity to the land in that county of Dana Sherrill, who was a minister of the Congregational church during those years; that Sherill engaged cross-complainant to care for and look after his lands; that cross-complainant did so, looked after the crops and the marketing of the same, paid the taxes, made improvements on the land, "and performed labor and services for which he never received any compensation." The cross-bill alleged Sherrill agreed to will cross-complainant eighty acres of land described, in consideration of the services rendered by cross-complainant. The cross-

bill prayed that said eighty acres of land be decreed to be the property of cross-complainant.

Afterwards the three residuary legatees, the American Board of Commissioners for Foreign Missions, the American Missionary Association and the Congregational Home Missionary Society, filed a petition in the case, alleging they were the residuary legatees under the will of Dana Sherrill, deceased, under which they took for their corporate purposes the residuum of testator's estate, subject to the charge of the legacies to the trustees of Beloit College, the Hoopeston Public Library and the Congregational Board of Ministerial Relief; that petitioners had agreed with all the legatees except the Hoopeston Public Library that in order to save expenses of litigation petitioners would pay said legacies, with interest from date of death of the widow at five per cent per annum, out of the proceeds of the sale of the land when petitioners should sell it, which they agreed to do within a reasonable time. The petition alleges a tender to complainant of $500, with interest at five per cent from the date of the death of the widow of testator and costs accrued up to the time of the tender, which sum the petitioners brought into court and offered to pay and turn over to complainant and prayed that the bill be dismissed. The board of trustees of Beloit College filed their consent and request that the suit be dismissed, and the Congregational Board of Ministerial Relief did likewise. Subsequently the Attorney General filed a petition for leave to intervene, and later a petition for leave to be made a party defendant and to file an answer.

The court sustained a demurrer to the cross-bill of Fred H. Ayres and dismissed the same for want of equity, and also denied the motions of the Attorney General, allowed the motion of the residuary legatees, and entered a decree dismissing the complainant's bill without costs and "without prejudice to the right of the board of trustees of Beloit College and the Congregational Board of Ministerial Relief to

bring any appropriate action to recover their said respective legacies of $30,000 and $500, with interest from April 13, A. D. 1917." The decree found and recited that the residuary legatees had tendered the Hoopeston Public Library $500, with interest, and had kept the tender good by paying said sum into court, and that thereby all the right, title, interest, claim and cause of action, either legal or equitable, of the Hoopeston Public Library under the will of Dana Sherrill, deceased, ceased and determined. The Hoopeston Public Library, Fred H. Ayres, cross-complainant, and the Attorney General, each appealed from the orders and decrees of the circuit court.

The will is plain and free from ambiguity, and it is not and could not be seriously contended that the complainant sought or had any reason to seek a decree of the court construing and defining the meaning of the will. The only pretense for a construction of the will is the allegation in the bill that the gift to complainant was to the Hoopeston Public Library while the name adopted by that institution was the Hoopeston Free Public Library. The relief sought was the appointment of a trustee to carry out the terms of the will by selling the land and distributing the proceeds in accordance with the directions of the will.

The material question is the contention of the appellant library that what the residuary legatees sought to accomplish was a re-conversion of the property, and that this could not be done without the consent of all the legatees. The devise of the remainder of the estate was of personal property and not of land. The direction to sell the remainder and distribute the proceeds was an equitable conversion of the land into money, and the gift of the proceeds of the sale was a gift of money and not of land. It has been so held by this court from *Baker* v. *Copenbarger,* 15 Ill. 103, down to the present time. The general rule is that there may be a re-conversion of the bequests in cases of equitable conversion where all the legatees are *sui juris* and agree

and elect to take the land instead of the proceeds of its sale. (*Johnson* v. *Lee*, 228 Ill. 167; 6 R. C. L. 1090.) The doctrine of equitable conversion is based on the principle that equity regards things directed or agreed to be done as having been already performed where nothing has intervened which ought to prevent a performance. (9 Cyc. 825.) "Re-conversion is that imaginary process by which a prior constructive conversion is annulled and the converted property restored, in contemplation of law, to its original state." (9 Cyc. 853.) It is well settled by authority that where there is a devise of the proceeds of the sale of land to a number of persons and the amount each is entitled to receive cannot be determined until the land is sold there can not be a re-conversion except upon the concurrent action of all the devisees. In such case it cannot be determined what the interest of the respective devisees in the land is worth except by a sale of the land, and therefore no payment could be made to one devisee of his interest by the other devisees. Here the land was directed to be sold and out of the proceeds were first to be paid definite sums named to each of three legatees and the remainder of the proceeds paid to the three residuary legatees. If all the proceeds of the sale had been directed to be paid to the three residuary legatees there could be no doubt of their right to elect to take the land instead of the money. All the proceeds of the sale of the land were given the three residuary legatees after first paying each of the three special legatees a fixed and definite sum. When they were paid all right and interest of said legatees under the will ceased and determined. The reason for the rule requiring all the legatees to agree to a re-conversion did not exist, for no one could be injured by the payment by the three residuary legatees to the trustees of Beloit College, the library and the Congregational Board of Ministerial Relief of the sums directed to be paid them, respectively. The three residuary legatees would

then be entitled to the whole of the proceeds of the sale of the land, or to the land, as they might elect.

In our opinion the rule contended for by the appellant library that all the legatees must consent to the re-conversion is not applicable for the reasons stated.  When all the other parties interested had agreed and the library was tendered all it was entitled to and all it claimed, we can see no reason whatever why it should not accept it.  When said three legacies are paid there are no other persons than the residuary legatees who have any interest in retaining the fictitious character of the estate, and they may elect to re-convert it into its legal character without injury to anyone. The library was not asked to consent to take its interest under the will in land instead of money, but was tendered in money all it claimed or had any right to claim in any event.  We have been referred to no case where the precise question has been passed on, except a decision of the Kansas City court of appeals in *Gilbreath* v. *Cosgrove,* 193 Mo. App. 419, but we think the views we have expressed find support in 3 Pomeroy's Eq. Jur. sec. 1176, and 13 Corpus Juris, 888, in which latter work it is said: "As a general rule, all persons *sui juris* or under no disability inhibiting them from contracting in regard to their property, and who have the exclusive beneficial interest in the property constructively converted, may elect to take the property in its actual condition.  But this rule does not apply to instances where the election of less than all could not possibly injure those not joining in the election."

There is nothing in this case to cause us to incline to apply the rule contended for by the library unless to refuse to do so would be contrary to law.  No possible injury can result to the library from affirming the decree, and the reason upon which the general rule was based being absent, we do not feel it incumbent upon us to blindly apply in this case a rule which had its origin in and is applicable

to an entirely different situation from the one we are here dealing with. The general rule referred to is sound and based on both reason and justice as applied to situations out of which it originated but it is neither reasonable nor just to apply it here, and it has never been applied by this court, or any other court so far as we know, in a case like the one we are considering. If the circuit court had denied the motion to dismiss and had appointed a trustee to sell the land the appellant library would not have profited a penny more than it would by accepting payment of its legacy tendered it and dismissing the bill.

In its reply brief the library says the circuit court "erred in not fixing or giving the appellant an opportunity to have fixed a reasonable solicitor's fee as part of its costs." It does not appear any request of that kind was made in the circuit court.

No reversible error was committed by the court in denying the motions of the Attorney General.

We have above set out the substance of the cross-bill as it appears in the abstract. The causes of demurrer alleged were that the cause of action appears upon the face of the bill to be barred by the Statute of Limitations; that it was an oral contract within the Statute of Frauds, and that it did not state or set forth facts entitling the cross-complainant to equitable relief. The court correctly sustained the demurrer to the cross-bill on the ground that it did not state any facts which entitled cross-complainant to a specific performance of the contract alleged, if for no other reason. We are also of opinion the contract alleged was within the Statute of Frauds. The cause of action also was barred by the five year Statute of Limitations unless some good reason was shown for the delay in bringing suit to enforce it, and none is alleged in the cross-bill.

The decree of the circuit court is affirmed.

*Decree affirmed.*