**HOLTZ et al. v. CARY et al.** (No. 9332.)

Court of Civil Appeals of Texas. Galveston.
Dec. 11, 1929.

Peareson & Peareson, of Richmond, and A. M. John and Huggins, Kayser & Liddell, all of Houston, for appellants.

Baker, Botts, Parker & Garwood, S. H. German, and Jas. L. Shepherd, Jr., all of Houston, and Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., for appellees Roxana Petroleum Corporation and Allie Quillin.

GRAVES, J. The trustees of a moribund joint-stock association, the Woods & Holtz Land & Mercantile Company, which, by the mutual concession of all here concerned in its affairs, on December 15, 1926, not only owed to Miss Allie Quillin, Mrs. Leila S. Rumble, and Mrs. Mattie C. Woods as its sole creditors, the respective amounts of $1,522.54, $2,785.18, and $994.27—this debt to Mrs. Woods, however, being subject to the right of Miss Quillin to hold the evidences of it as collateral security for the prior payment of her own $1,522.54—but also possessed as its only remaining asset 54.3 acres of land, in furtherance of a plan previously discussed among them, two of the trustees being then also agents for all three of the creditors, looking to the closing up of the association's business by turning over the 54 acres to the three ladies in cancellation of their debts, in meeting assembled, passed a resolution which, after reciting the facts already in substance stated, thus continued:

"Whereas, Leila S. Rumble, Allie Quillin and Mattie C. Woods are willing to accept the above described real estate in full payment of the aforementioned obligations and all other obligations which they and each of them have or may have against the above mentioned trust estate, and/or the trustees thereof either in their individual or fiduciary capacity. .

"Now, therefore, be it resolved by O. A. Johnson, W. Clay Woods and J. M. McComb, as Trustees of the trust described in the preamble hereof, that the above described land be conveyed to Leila S. Rumble, Allie Quillin and Mattie C. Woods, or such person as they may nominate to hold title thereto for them, in full satisfaction of any and all claims that they have or may have against the above mentioned trust or against these trustees, either in their individual or fiduciary capacity and that the obligations held by said Leila S. Rumble, Allie Quillin and Mattie C. Woods are to be surrendered to these trustees and by them canceled.

"Be it further resolved that these trustees to the extent that they have authority to do so be authorized to dissolve the trust estate after conveying said property, as at that time said trust estate will be without assets and in so far as these trustees know will have no creditors."

The three lady creditors, acting through the two association trustees, who had been during the preceding consideration of the plan also their individual agents, Mrs. Rumble and Mrs, Woods by W. Clay Woods, and Miss Quillin by J. M. McComb, having in the meantime mutually agreed to have Frank H. Cary act as trustee for them rather than to take the deed direct to themselves, accepted in a signed document the proposed plan upon these terms:

"In consideration of the conveyance to Frank H. Cary, our nominee, of the following described property situate in Fort Bend County, Texas: * * *

"We, the undersigned, and each of us, hereby relinquish and release any and all claims which we have or may have against the trust estate known as Woods & Holtz Land & Mercantile Company created by declaration of trust dated March 22, 1921, and recorded in Fort Bend County, Texas, in Deed Record Volume 90 at page 215, and also any and all claims and obligations which we have or may have against O. A. Johnson, W. Clay Woods and J. M. McComb and the former trustees under said trust agreement either in their individual or fiduciary capacity.

"Executed in quadruplicate this 15th day of December, 1926.

"Mattie C. Woods
"Allie Quillin
"Leila S. Rumble."

As coincident parts of the transaction, the trustees, first, deeded the 54 acres to Cary as an individual, under recitation that he had paid them therefor $4,926.99 in cash, without mention of his trusteeship, thus apparently vesting in him the unconditional title, and, second, he in turn executed the following declaration of trust:

"These presents witnesseth: Whereas, by deed dated December 15, 1926, O. A. Johnson, W. Clay Woods and J. M. McComb as trustees of the trust estate known as Woods & Holtz Land & Mercantile Company conveyed to me, Frank H. Cary the following described real estate lying, being and situated in Fort Bend County, Texas (describing the 54.3 acres of land involved by metes and bounds):
* * *

"And whereas, at the delivery of said deed to me said Woods and Holtz Land and Mercantile Company was indebted on account of principal and interest as of December 1, 1926, to Leila S. Rumble in the sum of Twenty-seven Hundred Eighty-five and 18/100 ($2,785.18) Dollars, to Allie Quillin in the sum of Fifteen Hundred Twenty-two and 54/100 ($1,522.54) Dollars, and to Mattie C. Woods in the sum of Nine Hundred Ninety-four and 27/100 ($994.27) Dollars; and

"Whereas, the indebtedness of said Woods and Holtz Land and Mercantile Company to Mattie C. Woods was held by Allie Quillin

394

as security for the indebtedness of said Woods and Holtz Land and Mercantile Company to her; and

"Whereas, the above described land was conveyed to me in full satisfaction of all obligations of said trust estate to the said Leila S. Rumble, Allie Quillin and Mattie C. Woods; and

"Whereas, I have no right, title or interest in or to said real estate but the same was conveyed to me in trust for the benefit of the persons last above named;

"Now, therefore, in consideration of the premises and the sum of One (1.00) Dollar, receipt of which is hereby acknowledged, I, Frank H. Cary, do hereby declare that I hold title to the above described real estate in trust for the said Leila S. Rumble, Allie Quillin and Mattie C. Woods (hereinafter called the ('Beneficiaries'), their heirs and assigns upon these conditions:

"(1) I hereby agree to convey said real estate at the request and cost of the beneficiaries to such person or persons and at such time or times and in such manner as the beneficiaries shall designate.

"(2) Any and all proceeds of any sale received by me, after paying the expenses incident thereto, will be by me distributed amongst the beneficiaries as follows:

"(a) To Leila S. Rumble and Allie Quillin and if such proceeds shall not be sufficient to pay each of them an amount equal to the amount thereinbefore specified as due them from the Woods and Holtz Land & Mercantile Company on December 1, 1926, together with interest thereon at the rate of six per cent. (6%) per annum from that date, distribution shall be made among them in the proportion that the amount which was due to each of them on December 1, 1926, as aforesaid, bears to the total amount to be distributed.

"(b) Whatever remains after paying Leila S. Rumble and Allie Quillin an amount equal to what was due them from the Woods & Holtz Land and Mercantile Company on December 1, 1926, together with interest thereon from that date at the rate of six per cent. (6%) per annum shall be paid to Mattie C. Woods.

"Executed in triplicate this 15th day of December, 1926.

"Frank H. Cary."

Other contemporaneous and contributing documents need not be referred to.

Mrs. Rumble later received in money the full amount of her debt, and quitclaimed to Mrs. Woods all right, title, or interest in the land; Miss Quillin, by adopting this declaration of trust by Cary, acting under and suing upon it herein, is bound by it, inclusive of its unqualified recitation that at the time he so took the deed to the 54 acres the association was indebted to Mrs. Woods in the sum of $994.27, hence waived her previously mentioned claim of priority against that obligation as being collateral security for her own.

On January 14, 1928, Miss Quillin, by quitclaim deed, conveyed all her interest in the 54 acres to Roxana Petroleum Corporation, reserving, however, certain royalty interests in any minerals that might be produced therefrom; likewise on January 17, 1928, Mrs. Woods, joined by Mrs. Rumble, Kate May Holtz, B. W. Holtz, and Frank H. Cary, as such above-described trustee, executed a mineral lease on the northeasterly 30 acres of the 54 acres to the Southern Exploration Company, granting it the exclusive right of operating thereon for oil, gas, and other minerals, but "neither Allie Quillin nor Roxana Petroleum Corporation requested, authorized or ratified any act of Frank H. Cary, Trustee, in leasing or attempting to lease, or contracting for a lease of the lands involved herein, but said Quillin and Roxana Petroleum Corporation have denied and still deny the authority of Cary to take any action in the premises."

So that, the conflicting claims converged at the trial into those, on the one hand, of Miss Quillin and her grantee, the Roxana Petroleum Corporation, and on the other, of Mrs. Woods, along with the parties holding under or making common cause with her, chief among whom was such lessee, Southern Exploration Company; the latter group constitute the appellants in this court, who named the trustee Frank H. Cary an appellee pro forma, the latter the active appellees here.

Since the determination of the issues presented depends upon the construction of the three quoted-from and controlling documents, in the light of the able trial court's findings of fact, which are relied upon by both sides, it is not deemed essential that detailed statement be made of the procedural form the action was finally cast into among and between the numerous parties; it is sufficient to say that the title to the 54 acres of land was the casus belli, and it was properly put in issue between them pursuant to their several contentions as to the meaning and legal effect, in the attending circumstances, of these instruments.

The trial court, hearing the cause without a jury, adjudged that Frank H. Cary, trustee, was a mere naked title holder of the 54 acres; that Roxana Petroleum Corporation recover of all other parties to the suit "an undivided 1522.44/5301.87ths interest" in the tract; that Mrs. Woods, subject to the Southern Exploration Company's contractual leasehold rights therein, recover of all other parties than it "an undivided 3779.43/5307.87ths interest" in and to the 54 acres; and that the exploration company's prayer for the confirmation of its mineral leasehold be denied, in so far as affected the interest awarded Miss Quillin and the Roxana Corporation, but otherwise be confirmed, etc.

The court also filed conclusions of law, elaborating the considerations in response to which this judgment was rendered; in support of it in this court the appellees thus epitomize their position: "The deed of December 15, 1926, having been made for a consideration paid by Leila S. Rumble, Allie Quillin and Mattie C. Woods, even though the trust agreement of that date became a part thereof, yet under said trust agreement Frank H. Cary, the trustee, had no active duties or powers, but was merely to convey said 54.3 acres of land at the request of the beneficiaries named, therefore said trust was merely a dry or passive trust, and both the legal and the equitable title to said land vested immediately in the said Leila S. Rumble, Allie Quillin and Mattie C. Woods in the proportion that each paid the consideration for same; and appellees cannot be divested of their interest in said land or be compelled to consent to a conveyance thereof against their will in direct violation of the terms of the agreement between the parties."

The challenging view of appellants is presented in this two-pronged proposition:

"Where land is conveyed to a Trustee nominated by, and for the benefit of, the three sole creditors of a joint stock association in consideration that such creditors relinquish and release any and all claims against the association, including claims expressly specified; and the Trustee, as a part of such transaction, issues a Declaration of Trust to said three creditors stating that he holds such land in trust for them, to sell as the three may direct and distribute the net proceeds to two of them preferred over the third one, and, after paying the preferred two designated sums of money from such proceeds, to pay over 'whatever remains' to the subordinated third one:

"(1) Such third one is entitled to pay the preferred two the designated sums, and elect on such payment to treat the land as equitably hers in fee.

"(2) A sale of the land, or any part thereof or interest therein, by the Trustee with the approval of the subordinated third one, for sufficient to pay the preferred two the designated sums and leave a residue in land and/or money for the subordinated third one, will be upheld and/or confirmed in equity, notwithstanding the dissent of one of the preferred two."

█ We agree with appellants; no joint sale by the three ladies was ever made, but, under the undisputed evidence, appellee Quillin's attitude rendered that impossible, since she arbitrarily pursued a lone course from the beginning, first singly selling her assumed individual interest in the land itself to the Roxana Corporation, and then refusing to join the other two ladies in their lease to the exploration company, which in legal effect constitued a sale of an interest in the land. Stephens County v. Mid-Kansas Oil Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; consistently therewith she further, in like manner, so conducted herself into and throughout this litigation, at all times, along with her coappellee, declining a standing tender made them by their antagonists in the suit, as in satisfaction of all their rights under the quoted instruments, of the full amount of her debt with all proper interest thereon, and asking a pro rata interest in the 54.3 acres of land as such, which they both contended could not be taken out of either of them, by tender or payment.

██ In our view the three instruments which the learned trial judge properly held must be read together as constituting one transaction vouchsafed her no such rights; on the contrary, we think they clearly created a trust in the land that necessarily contemplated, although not expressly commanding, an opportune sale thereof by the trustee as the only possible means by which each and all of the three beneficiaries could get what it was thereby mutually and plainly intended they should have. Crane v. Bolles, 49 N. J. Eq. 373, 24 A. 237; Pomeroy's Eq. Jurisprudence (4th Ed.) pp. 2751, 2752, § 1159; Grove v. Willard, 280 Ill. 247, 117 N. E. 489, at page 492, column 2; Wheless v. Wheless, 92 Tenn. 293, 21 S. W. 595; Richardson v. McCloskey (Tex. Civ. App.) 261 S. W. 801, page 813, column 2; 13 Corpus Juris, pp. 885, 886, § 81; Id., p. 888, § 87, text for note 26; 6 Ruling Case Law, 1091, § 23, text for note 18, also page 1074; Gilbreath v. Cosgrove, 193 Mo. App. 419, 185 S. W. 1181; Sherman v. Flack, 283 Ill. 457, 119 N. E. 293, 5 A. L. R. 456; Hoopestown Public Library v. Eaton, 283 Ill. 449, 119 N. E. 647; Stephens County v. Mid-Kansas Oil Co., 113 Tex. 160, 254 S. W. 290, 295, 29 A. L. R. 566; Terrell v. McCown, 91 Tex. 245, 43 S. W. pages 2, 6; 39 Cyc. p. 346, note 98, and p. 362; Lenow v. Arrington, 111 Tenn. 720, 69 S. W. 314.

█ If that be true, it further follows under the same authorities that no one of the beneficiaries would, under the general and well-defined principles of equity, which happily, by express recognition, permeate our blended system of jurisprudence in Texas, be permitted to defeat a proper sale by the interposition of such an arbitrary will as we have found was so exercised in this instance; the ultimate task here, as in all cases involving like or similar trusts, whether springing from a will, a deed, or a contract, is to find what the intention of the makers was.

Looked at with that objective, it seems to us these contracting parties could have meant nothing else by so qualifying their acceptance of the then merely tentative undertaking than to simply impound the land as a means of paying the debts of each in the order and subject to the contingencies stipulated—not to vest the title to it disassociated from that controlling purpose in anybody. In other words, among and as between them-

selves, they thereby in unmistakable language expressly wrote into and ingrafted upon the pact tendered them by the old association's trustees—in form absolute as concerned their transaction with those grantors —reservations to the effect that the land would only be held as a corpus or asset, from the proceeds of which (to be realized upon through a sale by the medium they had chosen, their trustee) the preferred two of them should first be paid their specifically stated claims in full, with whatever remained to go to the third one.

Satisfied, as we are, that ample support for this construction and these conclusions from it are to be readily found in the cited authorities, further discussion is deemed unnecessary. It follows that the trial court's judgment should be reversed, and that decree should here be entered: (1) Vesting title to the whole of the 54.3 acres of land in appellant Mrs. Mattie C. Woods, subject to the lease on 30 acres thereof held by appellant Southern Exploration Company; (2) requiring that appellee Miss Quillin accept the tender made below of her full debt, with interest, in satisfaction of all her rights herein involved; and (3) adjudging that appellee Roxana Petroleum Corporation acquire nothing as against appellants by virtue of its deed from Miss Quillin; that order has accordingly been entered.

Reversed and rendered.